438 S.E.2d 42

James E. MARION, Norma Marion, William Schillings, Betty Schillings, Mamie Nida, Wilma Furr, Mildred M. Hanly, Carolyn Hurt, Charles Hurt, John H. Hurt, and Sarah J. Hurt, an infant who sues by Charles E. Hurt, her father and next friend, Appellants,

v.

SABRA TOURS INTERNATIONAL, INC., a Maryland Corporation; Isaac Neger; and On Your Way Travel, Inc., a West Virginia Corporation, Appellees.

No. 21612.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Nov. 23, 1993.

Charles E. Hurt, Charleston, for appellants.

Karl H. Goodman, Baltimore, MD, for appellees Isaac Neger and Sabra Tours Intern.

Charles B. Dollison, Bowles Rice McDavid Graff & Love, Charleston, for appellee On Your Way Travel.

NEELY, Justice:

In the case before us, the appellants were tourists who travelled to Israel on a tour sponsored by Trinity Lutheran Church in Charleston. The church, through its representatives, contacted a local travel agency, On Your Way Travel, Inc., for tour arrangements. On Your Way Travel, Inc. in turn contacted the appellees, Isaac Neger and Sabra Tours International, Inc., by telephone and mail on numerous occasions, and Mr. Neger arranged the land portion of the tour, including hotel accommodations. The appellants complain that after they arrived in the Holy Land, they did not receive the tour itinerary that Mr. Neger and Sabra Tours International, Inc. had promised and that had been confirmed to them before they left West Virginia.

Notwithstanding confirmation of first-class accommodations in three hotels in Israel, the appellants found that Mr. Neger and Sabra International Tours, Inc. had arbitrarily

changed their accommodations from the four star Grand Beach Hotel to the unrated shabby Park Hotel on the last leg of their trip. Two issues are raised on this appeal: first, whether the circuit court was correct in dismissing this civil action because appellants failed to post a $100 bond required by *W.Va. Code* 56–3–33 [1984]; and second, whether the circuit court was correct in dismissing this complaint for lack of personal jurisdiction. In both instances, we find the circuit court erred and we reverse.

## I.

After this suit was filed and the appellees, Isaac Neger and Sabra Tours International, Inc., filed their answer, an order was entered on 9 December 1987 striking the pleadings of Mr. Neger and Sabra Tours International, Inc. and awarding the appellants judgment by default in an amount to be determined by inquiry. Upon the inquiry of damages in this case, the court found:

"that each plaintiff is entitled to recover the sum of $307.00 representing the value of the tour prepaid by the plaintiffs but not received by them; the sum of $40.00 for meals and expenses to which they were entitled and did not receive and the sum of $250.00 each for aggravation, annoyance and inconvenience; that James E. Marion and Norma Marion are entitled to the amount of $234.60 for additional hotel expenses as well as is William Schillings and Betty Schillings; that Mamie Nida is entitled to the amount of $117.30 for additional hotel expenses, that Wilma Furr is entitled to the amount of $117.30 for hotel expenses and that Charles E. Hurt is entitled to the sum of $469.20 for additional hotel expenses;

"Wherefore, it is accordingly ordered that the plaintiffs, James E. Marion and Norma Marion, recover of and from the defendants, Sabra Tours International, Inc. and Isaac Neger, the sum of $831.60, that the plaintiffs, William Schillings and Betty Schillings recover of and from the defendants, Sabra Tours International, Inc. and Isaac Neger, the sum of $831.60, that the plaintiff, Mamie Nida, recover of and from the defendants, Sabra Tours In-

ternational, Inc. and Isaac Neger, the sum of $714.30, that the plaintiff Wilma Furr recover of and from the defendants, Sabra Tours International, Inc. and Isaac Neger, the sum of $714.30 and Charles E. Hurt, for and on behalf of himself, Mildred M. Hanly, Carolyn Hurt, Sarah J. Hurt, and John H. Hurt recover of and from the defendants, Sabra Tours International, Inc. and Isaac Neger, the sum of $3,454.20, and their costs of action with interest thereon until paid."

Thereafter, upon motion of Mr. Neger and Sabra Tours International, Inc., the circuit court, finding that the appellants had failed to post a nonresident bond in the sum of $100 required by *W.Va.Code* 56–3–33 [1984] when the defendant is a non-resident, set the judgment aside. Mr. Neger and Sabra Tours International, Inc. then filed a motion to dismiss alleging lack of jurisdiction. The circuit court treated this motion as a motion for summary judgment and granted such motion, dismissing Isaac Neger and Sabra Tours International, Inc. on the ground of lack of jurisdiction.

## II.

The circuit court set aside the judgment awarded the appellants on 3 May 1989 as null and void because the appellants at the time of filing their original complaint had not executed a bond in the sum of $100 before the clerk of the circuit court as required by *W.Va.Code* 56–3–33(c) [1984]. This ruling was based upon our holding in *Stevens v. Saunders*, 159 W.Va. 179, 220 S.E.2d 887 (1975). However, the *Stevens* case is not on point. In *Stevens*, the clerk of the circuit court refused to issue a summons until the plaintiffs in that case had posted the required $100 bond. Because the plaintiffs posted no such bond until the statute of limitations had run, we held that the cause of action was barred because the suit had not been properly begun within the applicable statutory period. In Syllabus Point 2, we stated:

*Code,* 56–3–31, as amended, is in derogation of common law in allowing a summons to be served upon the Auditor in an action against a nonresident defendant and therefore must be strictly adhered to in accor-

dance with its clear and unambiguous terms.

In *Stevens,* the circuit clerk fully complied with *W.Va.Code* 56–3–33(c) [1984]: he refused to begin the suit until the $100 bond was posted. In *Stevens,* the clerk himself brought to the plaintiffs' attention the need to comply with the bond provisions of *W.Va. Code* 56–3–31(a), the nonresident motorist statute at the time. Indeed, the circuit clerk performed his proper function: he declined to issue process until the statutory requirements had been met. That, plainly, is *his* job.

In the case before us, in contrast, the circuit court did not bring the bond requirement to counsel's attention and proceeded to issue process even though the statutory bond had not been posted. Practicing law is difficult enough without practitioners' being cudgeled and bludgeoned at every novel turn by some nitpicking rule that encourages a system of trial by ambush. Lawyers frequently find themselves ensnared either through ties of affection or pure happenstance in some area of the law where they have no prior experience or expertise. The system simply can't work if every member of the bar who isn't a certified, $500–an–hour expert in a particular field hesitates to accept a case on even the smallest matter in fear of subjecting himself to potential malpractice. It does not further the public interest to discourage the general practice lawyer—accessible in his or her store-front office—and replace him or her by hourly billers inhabiting mega-firm rabbit warrens.

 This is an ideal case for applying the rule "no hurt, no foul." *See Rosier v. Garron,* 156 W.Va. 861, 199 S.E.2d 50 (1973). There is no question that the appellants should have posted the bond. But once the appellees knew that the appellants had not posted the bond, the proper course would have been to make a motion for such bond to be posted which the court should have granted. Nothing in our law requires the sanction of dismissal of a suit where process has been properly served simply because the plaintiffs did not post a bond as required by *W.Va. Code* 56–3–33 [1984]. Sanctions should be condign to the dereliction. As we said in *Rosier,* 156 W.Va. at 876–77, 199 S.E.2d at 59 (1973):

The practicing lawyer has demands upon him which would severely tax the abilities of history's most versatile Renaissance men. Mistakes by lawyers are not mistakes by clients, and where a lawyer makes a mistake which causes his client to forfeit a case, the rule that identical factual situations outside the judicial process shall yield identical results in the judicial process is severely violated. There are those rare occasions when the dignity of the court or the orderly administration of justice require a meaningful sanction which can only be exacted in the form of forfeiture; however, these instances are rare, particularly where the defect in the proceedings was precipitated by inexperience, the confusing state of the law, or even negligence, rather than by intentional disregard of duty. Many clients are required by financial reasons to retain young, inexperienced, or even marginally qualified counsel, and where there is no prejudice to the adverse party, a court should always endeavor to eliminate disparities in results on the same set of facts attributable exclusively to competence of counsel as long as such action does not prejudice the other side. "Prejudice" in this context does not mean the mere loss of a lawsuit or need to proceed to trial because of the inability to profit from another's mistake, but rather it means a disadvantage of position which would not have occurred had the lawsuit been prosecuted according to exacting standards of procedural regularity.

III.

The circuit court also erred in dismissing this suit for lack of jurisdiction. The problem before us, to wit, a travel agent's indifference to his contract obligations, is important because the injury suffered by the appellants is prototypical of a host of wrongs that are perpetuated daily by companies in the travel business. Persons like Mr. Neger and corporations like Sabra Tours, Inc. hold themselves out to be specialists in travel to particular parts of the world and invite business from travel agencies throughout the United States, including West Virginia. When they then cheat our residents, they

will be subject to our jurisdiction until the Supreme Court of the United States deems otherwise.

■■■ There is absolutely no difference between a foreign airline, an out-of-state resort, or an out-of-state travel agency that actively solicits reservations from travel agents in West Virginia through advertising on the one hand, and an out-of-state manufacturer of a product which puts that product into the stream of commerce knowing full well that it may injure someone in West Virginia. Thus, in *Hill by Hill v. Showa Denko, K.K.*, 188 W.Va. 654, 425 S.E.2d 609 (1992) we said in Syllabus Point 2:

" 'Personal jurisdiction "premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause" and can be exercised without the need to show additional conduct by the defendant aimed at the forum state.' *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987)." [1]

In short, if it could be shown that an out-of-state travel agent did nothing but service residents of its own state and was importuned by a West Virginia resident through the mail or by long distance telephone to arrange a tour, jurisdiction in our courts might be avoided in that the travel agency would not have the requisite minimal contacts with this State. But where, as is the case here, out-of-state specialists accept large tours from *travel agents* in West Virginia, then they have held themselves out in the stream of commerce to such an extent that our long arm jurisdiction will reach them.

Indeed, it is well established, but not entirely without cavil, that where an out-of-state travel agency contracts for even one tour with an in-state agent, the out-of-state travel agency is "doing business" in the state where the travellers live and is amenable to service of process in that state. *Carter v. Trafalgar Tours, Ltd.*, 704 F.Supp. 673 (W.D.Va.1989); *Gelfand v. Tanner Motor*

Tours, Ltd., 385 F.2d 116 (2d Cir.1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968); *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990); *Rainbow Travel Service v. Hilton Hotels Corp.*, 896 F.2d 1233 (10th Cir.1990); *Weintraub v. Walt Disney World*, 825 F.Supp. 717 (E.D.Pa.1993); *Busch v. Sea World of Ohio*, 95 F.R.D. 336 (D.C.Pa.1982); *Walker v. Carnival Cruise Lines, Inc.*, 681 F.Supp. 470 (N.D.Ill.1987); *Rogers v. Clipper Cruise Lines, Inc.*, 650 F.Supp. 143 (D.Colo.1986); *Gavigan v. Walt Disney World Co.*, 630 F.Supp. 148 (E.D.Pa.1986); *Ladd v. KLM Royal Dutch Airlines*, 456 F.Supp. 422 (S.D.N.Y.1978); *Holt v. Klosters Rederi A/S*, 355 F.Supp. 354 (W.D.Mich.1973); *Reed v. American Airlines*, 197 Mont. 34, 640 P.2d 912 (1982); *Frummer v. Hilton Hotels Internat'l, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967).

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for the reinstatement of the original judgment entered in favor of the plaintiffs.

Reversed and remanded with directions.

---

**1.** Furthermore, our holding in *Showa Denko* was predicated on the long-standing rule articulated in *Hodge v. Sands Manufacturing Company*, 151 W.Va. 133, 150 S.E.2d 793 (1966) that:

The standard of jurisdictional due process is that a foreign corporation must have such min-

imum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice.

Syl.Pt. 1, *Showa Denko, supra.*