503 S.E.2d 814

Glenda BROOKS, Administratrix of the
Estate of William Richard Brooks,
deceased, Plaintiff,

v.

The CITY OF WEIRTON, a West Virginia
municipal corporation; The City of
Weirton Sanitary Board; The City of
Weirton Building Agency; The City of
Weirton Public Works Department;
Weirton Area Ambulance & Rescue
Squad, Inc., Charles Isinghood, dba
Charles Isinghood Excavating; Cary
McCartney; and Shelley McCartney, De-
fendants.

No. 24445.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 13, 1998.

Decided May 19, 1998.

**248**

Karen E. Kahle, Ancil G. Ramey, Steptoe & Johnson, Charleston, for Weirton Sanitary Board.

Richard D. Klaber, S. Jane Anderson, Dickie, McCamey & Chilcote, Wheeling, for City of Weirton Public Works Dept.

Ronald B. Johnson, Weirton, for Cary McCartney and Shelley McCartney.

Frank Cuomo, Cuomo & Cuomo, Wellsburg, for Respondent.

William E. Galloway, Weirton, for Charles Isinghood, dba Charles Isinghood Excavating.

STARCHER, Justice:

This case arises from the death of William Richard Brooks, who was killed when the walls of a trench in which he was working collapsed.[1] Mr. Brooks' widow filed a wrongful death suit in the Circuit Court of Hancock County, naming several parties as defendants, including the City of Weirton and three of its agencies and boards.

Because the City is a political subdivision of the State of West Virginia, the "Governmental Tort Claims and Insurance Reform Act" ("the Act") that governs the legal immunity of political subdivisions and their employees, is implicated in the lawsuit. The Circuit Court of Hancock County has asked this Court to answer two certified questions, which are set forth below in Section I, regarding the application of the Act to the Brooks lawsuit.

In addressing the certified questions, we conclude that the "worker's compensation claim" immunity provisions of the Act do apply to the Brooks' claims against the City. We also conclude that the Act does not in all cases bar lawsuits against employees who are acting within the scope of their employment.

## I.

### Facts and Background

We shall refer to the City of Weirton and its agencies and boards, who are defendants below, as "the City." The plaintiff below is Glenda Brooks, who is the administratrix of the estate of her late husband William Richard Brooks.

The facts of the instant case, as they have been developed thus far in the proceedings before the circuit court, are fairly summarized in the circuit court's July 22, 1997 order certifying two questions to this Court. That order states in pertinent part:

. . .

This is a wrongful death action arising from the collapse of a trench in which the decedent was working. At the time of the decedent's death, he was working as an employee of the defendant, Charles Isinghood dba Charles Isinghood Excavating. The plaintiff, Glenda Brooks, wife of the decedent, has received workers' compensation benefits as the result of her husband's death. Other beneficiaries of the decedent's estate, however, such as his mother and sisters, are not eligible for workers' compensation benefits.

The plaintiff's theory of recovery against her husband's employer [Isinghood] is

---

1. In an era of increasingly pervasive safety consciousness and knowledge of preventive measures, it is sad to contemplate that such unnecessary and tragic accidents still occur. *Cf. Chenoweth v. Settle Engineers, Inc.,* 151 W.Va. 830, 156 S.E.2d 297 (1967), *overruled on unrelated grounds, Sanders v. Georgia–Pacific,* 159 W.Va. 621, 225 S.E.2d 218 (1976) (plaintiffs' decedents were working in a trench nine and one-half feet deep and approximately three feet wide when the sides of the trench caved in, completely covering them and resulting in their deaths).

based on the *Mandolidis* statute.[2]  The plaintiff's theory of recovery against the McCartneys, who owned the property upon which the excavation was being performed, is based on premises liability.  The plaintiff's theory of recovery against the political subdivisions [the City of Weirton, the City of Weirton Sanitary Board, the City of Weirton Building Agency, and the City of Weirton Public Works Department] is based on allegations that their employees recklessly issued permits for the excavation work, recklessly permitted the excavation work to be performed in an unsafe manner, and recklessly performed work near the location of the trench.  The plaintiff settled with the Weirton Area Ambulance & Rescue Squad, Inc., against which she asserted a failure to provide proper medical and emergency assistance, and it was dismissed as a party from the suit by order entered on the 2nd day of October, 1995.

On the 25th day of April, 1997, the Court entered an order ruling that the plaintiff's claim is covered by workers' compensation and, under *W.Va.Code*, 29–12A–5(a)(11) (1986), the political subdivisions are immune from liability.  This Court also ruled, however, that because the plaintiff has alleged that the "acts or omissions" of employees of the political subdivisions "were with malicious purpose, in bad faith, or in a wanton or reckless manner," but within the "scope of employment," summary judgment for the political subdivisions would not be granted.[3]

Given their novelty, as well as their importance in other cases pending, this Court has determined to certify the following questions to the Supreme Court of Appeals of West Virginia:

1.  Does *W.Va.Code*, 29–12A–5(a)(11) (1986) grant immunity to political subdivisions in a wrongful death case where the claim is covered by workers' compensation, but where not all of the ben-

**2.**  *W.Va.Code*, 23–4–2 [1994] is more correctly known as the "deliberate intent" statute.  *See Bell v. Vecellio & Grogan, Inc.*, 197 W.Va. 138, 144 n. 11, 475 S.E.2d 138, 144 n. 11 (1996).

**3.**  The pertinent portion of the circuit court's April 25, 1997 summary judgment order states:

. . .

The Court noted that the political subdivision defendants argue statutory immunity based on *W.Va.Code*, 29–12A–5(a)(9), (10), and (11). With regard to the Workers' Compensation immunity found in *W.Va.Code*, 29–12A–5(a)(11), the Court finds the following facts undisputed: (1) William R. Brooks was, at all times relevant, an employee of defendant Isinghood; (2) Glenda Brooks, wife of said decedent William R. Brooks, has received Workers' Compensation benefits as a result of her husband's death;  and (3) William R. Brooks' mother and sisters have not received Workers' Compensation benefits arising from William R. Brooks' death.

Accordingly, this Court concludes, as a matter of law, that (1) Plaintiff's claim is covered by Workers' Compensation law and (2) the political subdivision defendants are immune from suit pursuant to *W.Va.Code*, 29–12A–5(a)(11), as well as *W.Va.Code*, 29–12–A–5(a)(9) and (10).

Additionally, Plaintiff argues she is barred from naming individual employees of said political subdivisions working within the scope of their employment pursuant to *W.Va.Code*, 29–12A–13(b), although pursuant to *W.Va.Code*,

29–12A–5(b)(2), said employees are not immune from suit if said acts or omissions ". . . were with malicious purpose, in bad faith, or in a wanton or reckless manner. . . ."

The Court concludes as a matter of law that pursuant to *W.Va.Code*, 29–12A–13, if a Plaintiff alleges acts or omissions of an employee of a political subdivision allegedly done with malicious purpose, in bad faith, or in a wanton or reckless manner but done within the scope of his or her employment with said political subdivision, said cause of action must be brought against the political subdivision itself, not the individual employee.  Further, the Court concludes, as a matter of law, that said action against the political subdivision is not based upon common law theories such as *respondeat superior* or vicarious liability, but is instead a statutorily-imposed liability.

Accordingly, the Motions for Summary Judgment of said political subdivision defendants are hereby denied;  however, it is hereby ORDERED, DECREED, AND ADJUDGED that Plaintiff may proceed against said political subdivision defendants only in regard to the alleged wanton or reckless acts or omissions of its employees, or such acts or omissions performed in bad faith or with a malicious purpose.  Absent proof of such wantonness, recklessness, bad faith, or malicious purpose, as a matter of law, the City of Weirton, the City of Weirton Building Agency, the City of Weirton Public Works Department, and the Weirton Sanitary Board are immune from liability in this matter.

eficiaries of the decedent's estate are eligible for workers' compensation benefits? The Court answers this question in the affirmative.

2. May a political subdivision be held liable although the plaintiff's claim is covered by workers' compensation and would otherwise be barred by *W.Va. Code*, 29–12A–5(a)(11) (1986), where the plaintiff alleges that the employees of the political subdivision acted in a "wanton or reckless manner" under *W.Va. Code*, 29–12A–5(b)(2) (1986)? The Court answers this question in the affirmative.

Thus, in summary, the circuit court's certified questions and the answers that the circuit court made to those questions reflect two determinations by the circuit court.

First, the circuit court determined that the workers' compensation immunity provisions of the Act set forth in *W.Va.Code*, 29–12A–5(a)(11) [1986] for claims against political subdivisions bar the claims of the plaintiff against the City.

Second, the circuit court determined that the language in *W.Va.Code*, 29–12A–13(b) [1986] bars all suits against political subdivision employees who are acting within the scope of their employment. The circuit court further concluded that therefore the plaintiff's claims based upon allegations of reckless or wanton conduct by City employees acting within the scope of their employment may—indeed must—be brought against the City itself, despite the immunity of the City that is otherwise conferred by *W.Va.Code*, 29–12A–5(a)(11) [1986].

Having identified the parties, the factual background and the issues presented, we note the applicable standard of review and then address the questions posed by the circuit court.

. . .

4. The full text of *W.Va.Code*, 9–12A–5 [1986] is:
(a) A political subdivision is immune from liability if a loss or claim results from:
(1) Legislative or quasi-legislative functions;
(2) Judicial, quasi-judicial or prosecutorial functions;
(3) Execution or enforcement of the lawful orders of any court;

## II.

### *Standard of Review*

The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*. Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). Additionally, we note that the general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the Legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail. Syllabus Point 2, *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996).

## III.

### *Discussion*

### A.

### *The Workers' Compensation Immunity Question*

The first certified question we address is:

Does *W.Va.Code*, 29–12A–5(a)(11) [1986] grant immunity to political subdivisions in a wrongful death case where the claim is covered by workers' compensation, but where not all of the beneficiaries of the decedent's estate are eligible for workers' compensation benefits?

The statute referenced by the circuit court in this question, *W.Va.Code*, 29–12A–5(a)(11) [1986], states in pertinent part:

A political subdivision is immune from liability if a loss or claim results from . . . [a]ny claim covered by any workers' compensation law or any employer's liability law[.] [4]

(4) Adoption or failure to adopt a law, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
(5) Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection;
(6) Snow or ice conditions or temporary or natural conditions on any public way or other

This Court has previously addressed the scope of the immunity conferred upon political subdivisions by *W.Va.Code*, 29–12A–5(a)(11) [1986].

In *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996), we held that whether *W.Va.Code*, 29–12A–5(a)(11) [1986] provides a political subdivision with immunity for a claim initially depends upon determining whether the claim is "covered" by a worker's compensation law or other employer's liability law.[5] We determined in *Marlin* that because "fear of cancer" is not a cognizable claim under our workers' compensation law, the claims in that case, based upon fear of cancer from asbestos exposure, were not subject to political subdivision immunity.

■ We held in *Marlin* in Syllabus Point 3 that:

> public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of a political subdivision;
> (7) Natural conditions of unimproved property of the political subdivision;
> (8) Assessment or collection of taxes lawfully imposed or special assessments, license or registration fees or other fees or charges imposed by law;
> (9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority;
> (10) Inspection powers or functions, including failure to make an inspection, or making an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety;
> *(11) Any claim covered by any workers' compensation law or any employer's liability law;*
> (12) Misrepresentation, if unintentional;
> (13) Any court-ordered or administratively approved work release or treatment or rehabilitation program;
> (14) Provision, equipping, lawful operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner;
> (15) Any claim or action based on the theory of manufacturer's products liability or breach of warranty or merchantability or fitness for a specific purpose, either expressed or implied;
> (16) The operation of dumps, sanitary landfills, and facilities where conducted directly by a political subdivision; or

If the claims asserted by appellants would result in no benefits under any workers' compensation law or any employer's liability law, that is to say, if there is no recovery of benefits under such laws in lieu of damages recoverable in a civil action, then, notwithstanding W.Va.Code Sec. 29–12A–5(a)(11), such claims are not "covered" within the meaning of the immunity statute and may be asserted in the courts of this State against a political subdivision which is not their employer, and such recovery had as may be proved under a recognized cause of action.

We went on to state in *Marlin* that a political subdivision is immune from suit as to "all elements of damage arising under a 'covered' claim," 198 W.Va. at 643, 482 S.E.2d at 628. We further stated:

> ... if appellants' assertion is correct—if their claims are cognizable at law, and if

> (17) The issuance of revenue bonds or the refusal to issue revenue bonds.
> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (3) Liability is expressly imposed upon the employee by a provision of this code.
> (c) The immunity conferred upon an employee by subsection (b) of this section does not affect or limit any liability of a political subdivision for an act or omission of the employee.
> (Emphasis added.)

5. Although the circuit court in the instant case, in formulating the first certified question, stated that "the [Brooks wrongful death lawsuit] claim *is covered* by workers' compensation" (emphasis added), we must examine the correctness of that statement, since "coverage" is, under *Marlin*, the threshold issue in determining immunity.

In *Michael v. Marion County Bd. of Educ.*, 198 W.Va. 523, 529 n. 12, 482 S.E.2d 140, 146 n. 12 (1996), we said that the meaning of the term "covered" that is connoted within the parlance of *W.Va.Code*, 29–12A–5(a)(11) [1986] is "to afford protection against or compensation for." However, in the absence of "a clear statutory expression" of the meaning or application to be given to the word "covered" in the particular circumstances of a case, this Court will make the determination "in light of the rule favoring liability, not immunity[.]" *Marlin, supra*, 198 W.Va. at 644, 482 S.E.2d at 629.

the damages they claim are not . . . merely damages for which workers' compensation provides an alternate form of recovery— they will have no remedy for their present claims of the fear of contracting the disease and have no claim under workers' compensation until and unless their respective conditions develop to the point where benefits would be provided. In other words, if no benefits of any sort would be provided to appellants under workers' compensation by reason of their conditions, we cannot conclude that the conditions are "covered."

198 W.Va. at 644, 482 S.E.2d at 629.

■ We have also held that the mere fact that there is a difference between the workers' compensation and civil action remedies for an injury or loss does not dictate the conclusion that a civil action claim is not "covered" by workers' compensation law, for purposes of W.Va.Code, 29–12A–5(a)(11) [1986] immunity.

In O'Dell v. Town of Gauley Bridge, 188 W.Va. 596, 425 S.E.2d 551 (1992), we held that injured people who had been compensated for their injuries by workers' compensation were barred by W.Va.Code, 29–12A–5(a)(11) [1986] from maintaining a civil suit against a political subdivision for damages from those injuries—even though the damages available in a civil suit were broader or different than those available under the workers' compensation system.

In O'Dell, we rejected the argument that the failure of the workers' compensation system to provide compensation for "elements of damages, such as pain and suffering, total lost wages, and mental anguish" meant that a claim was not "covered" by workers' compensation. 188 W.Va. at 610, 425 S.E.2d at 565.

In the instant case, as in O'Dell, the mere fact that there is a difference between the remedies available under workers' compensation and those available in a wrongful death action does not require the conclusion that there has been "no recovery of benefits . . .

in lieu of damages recoverable in a civil action."

On the contrary, in the instant case there clearly has been "a recovery of benefits in lieu of damages available in a civil action." Syllabus Point 3, in part, Marlin, supra.

Because Mr. Brooks is deceased, any wrongful death civil action damages or workers' compensation benefits that flow from his death must go to his survivors. Some of these survivors, who may have a right to collect damages in a wrongful death action, are not entitled to benefits under the workers' compensation system. Do these survivors then have their own independent claims that are not "covered" by workers' compensation?

We addressed a similar issue in Marlin, where we briefly discussed claims made in that case by the workers' spouses and children. We stated:

> . . . [the] derivative claims [of the spouses and children] for loss of love, society, comfort, companionship and services . . . would not survive immunity under W.Va.Code Sec. 29–12A–5(a)(11), if the Board could establish such immunity [for the workers' claims;] . . . the derivative claims for loss of love, society, comfort, companionship, and services stand or fall with [the workers'] claims[.]

(Emphasis added.) 198 W.Va. at 655–56, 482 S.E.2d at 640–41.

Thus, we reasoned in Marlin that derivative children's and spouses' claims were subject to immunity under W.Va.Code, 29–12A–5(a)(11) [1986], if the workers' claims from which the children's and spouses' claims derived,—were "covered" claims under workers' compensation law.[6]

In Davis v. Foley, 193 W.Va. 595, 457 S.E.2d 532 (1995), we stated at Syllabus Point 4 (in part) that "damages in a wrongful death action arise out of the death of the decedent thereby making a wrongful death action a derivative claim."

We further stated in Davis that:

---

6. We also noted in Marlin that the children and spouses in that case had asserted their own independent tort claims, apparently based on their own exposure to asbestos fibers, and we stated

that these claims would not be derivative of the workers' claims. 198 W.Va. at 655, 482 S.E.2d at 640.

The damages provided for in [the] wrongful death statute are not unlike the damages recoverable in a loss of consortium claim: both arise out of the death or injury of another person. As one court stated, in the wrongful death action "[t]he estate and the survivors suffered loss, not directly from the collision, but from the loss of the deceased who was killed in the accident. All their claims are derivative from the deceased as was the husband's consortium claim[.]" ... [T]he basic premise appears fairly well-settled in other jurisdictions: the beneficiaries' claims in a wrongful death action arise out of the death of the deceased[.]

(Citations omitted.) 193 W.Va. at 599, 457 S.E.2d at 536.[7]

In the instant case, we apply the principles established in *Marlin* and *O'Dell.* We conclude that the claims of Mr. Brooks' survivors are derivative of his claim, and that the workers' compensation remedies available as a result of his death provide an alternative remedy which compensates for his loss. The wrongful death civil claim in the instant case should therefore be treated as a "covered claim" under workers' compensation law. As such, it is subject to immunity pursuant to *W.Va.Code*, 29–12A–5(a)(11) [1986].[8]

Therefore, we agree with the circuit court's answer to certified question number 1, and we hold that *W.Va.Code*, 29–12A–5(a)(11) [1986] grants immunity to political subdivisions in a wrongful death case where the decedent's claim is covered by any workers' compensation law or employer's liability law, even though not all of the beneficiaries of the decedent's estate are eligible for benefits under the workers' compensation law or employer's liability law.

## B.

### *The Wanton and Reckless Question*

■ The circuit court's second certified question asks:

May a political subdivision be held liable although the plaintiff's claim is covered by workers' compensation and would otherwise be barred by *W.Va.Code*, 29–12A–5(a)(11) (1986), where the plaintiff alleges that the employees of the political subdivision acted in a "wanton or reckless manner" under *W.Va.Code*, 29–12A–5(b)(2) (1986)?

The circuit court answered this question "yes"—based on the court's determination that language in *W.Va.Code*, 29–12A–13(b) [1986] bars all suits against political subdivision employees who are acting within the scope of their employment—and that therefore the plaintiff's claims based upon allegations of reckless or wanton conduct by City employees acting within the scope of their employment must be brought against the City itself, despite the immunity of the City that is otherwise conferred by *W.Va.Code*, 29–12A–5(a)(11) [1986]. *See* note 3, *supra.*

This Court has repeatedly recognized that the Act permits the naming of both political subdivisions and employees of political subdivisions as defendants in civil actions, under certain defined circumstances.[9]

---

7. *See generally, Farley v. Sartin*, 195 W.Va. 671, 674–675, 466 S.E.2d 522, 525–526 (1995) for a discussion of how our wrongful death statutes, *W.Va.Code*, 55–7–5 [1931] and 55–7–6 [1992], preserve a deceased person's right of action after the person's death, by permitting the claim to be brought by the deceased person's personal representative.

It should be noted that we are not addressing the issue of whether beneficiary or dependent claims for death benefits *in the workers' compensation system* are derivative of a workers' compensation claim, or are independent. We have held, in cases raising different issues of statutory interpretation and application, that such claims are not "derivative" in the context of that system. *See* Syllabus Point 1, *Gibson v. State Comp. Com'r.*, 127 W.Va. 97, 31 S.E.2d 555 (1944). *See*

also, *Staubs v. State Workmen's Comp. Comm'r*, 153 W.Va. 337, 348, 168 S.E.2d 730, 736 (1969); *Terry v. State Comp. Comm'r*, 147 W.Va. 529, 534, 129 S.E.2d 529, 532 (1963).

8. We do not by our decision in the instant case rule out the possibility that a grossly inadequate or patently unfair workers' compensation remedy for an injury or loss—in an egregious and exceptional case—might give rise to a persuasive argument that "coverage" under workers' compensation is not meaningfully present for purposes of establishing Governmental Tort Claims Act immunity. *See* note 5, *supra*. But nothing suggests such a situation in the instant case.

9. In *Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 412 S.E.2d 737 (1991), suit was filed

As to when employees of political subdivisions may be named as defendants, in Syllabus Point 1 of *Beckley v. Crabtree*, 189 W.Va. 94, 428 S.E.2d 317 (1993), we stated:

West Virginia Code Sec. 29–12A–5(b) provides that employees [10] of political subdivisions are immune from personal tort liability unless "(1) [h]is or her acts or omissions were manifestly [11] outside the scope of employment or official responsibilities; (2)[h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3)[l]iability

is expressly imposed upon the employee by a provision of this code."

Thus, *W.Va.Code*, 29–12A–5(b) [1986] establishes "three statutory exceptions to an employee's immunity . . . ," *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 621, 477 S.E.2d 525, 530 (1996). *See* note 4 *supra* for the full text of *W.Va.Code*, 29–12A–5 [1986].

One of those exceptions includes when an employee's conduct was "in a wanton or reckless manner . . . ," *W.Va.Code*, 29–12A–5(b)(2) [1986] (in part). *Holsten v. Massey*, 200 W.Va. 775, 787–789, 490 S.E.2d 864, 876–878

against both a political subdivision and the subdivision's employees. We upheld the constitutionality of the Act's overall grant of immunity to subdivisions and their employees. However, we also held that the plaintiff had sufficiently stated claims against both the subdivision and the subdivision's employees—so as to come within the Act's exceptions to statutorily-granted immunity.

In *Pritchard v. Arvon*, 186 W.Va. 445, 413 S.E.2d 100 (1991), suit was filed against both a political subdivision and its employee. In answers to certified questions, we upheld the constitutionality of the employee immunity provisions of the Act, and we suggested that the employee's conduct fell within statutorily-granted immunity.

In *Beckley v. Crabtree*, 189 W.Va. 94, 428 S.E.2d 317 (1993), suit was filed against both a political subdivision and its employee. We determined that the subdivision itself was not immune from suit. However, because none of the Act's exceptions to employee immunity applied, we held that the employee was immune from suit.

In *Hose v. Berkeley County Planning Comm'n.*, 194 W.Va. 515, 460 S.E.2d 761 (1995), suit was filed against both a political subdivision and its employee. We upheld the circuit court's determination that the subdivision itself was immune from suit; the plaintiffs abandoned their claim against the employee.

In *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996), suit was filed against both a political subdivision and its employee. We upheld dismissal of the claims against the subdivision itself on immunity grounds; but we reinstated the claims against the employee.

In *Holsten v. Massey*, 200 W.Va. 775, 490 S.E.2d 864 (1997), suit was filed against both a political subdivision and its employee. We upheld the dismissal of claims against the subdivision on immunity grounds, and we held that as a matter of law the employee's alleged conduct was covered by employee immunity.

Finally, in *Moore v. Wood County Bd. of Educ.*, 200 W.Va. 247, 489 S.E.2d 1 (1997) (*per curiam*), suit was filed against both a political subdivision and its employee. We held that the subdivision immunity provisions of the Act prohibited suit against the subdivision, and that the

provisions of the Act governing employee immunity barred suit against the employee.

10. *W.Va.Code*, 29–12A–3(a) [1986] (in part) defines an "employee" of a political subdivision as:

. . . an officer, agent, employee, or servant, whether compensated or not, whether full-time or not, who is authorized to act and is acting within the scope of his or her employment for a political subdivision.

*W.Va.Code*, 29–12A–3(d) [1986] defines the "scope of employment" as:

. . . performance by an employee acting in good faith within the duties of his or her office or employment or tasks lawfully assigned by a competent authority but does not include corruption or fraud.

While these statutory definitions seem somewhat circular, it appears that any circularity does not create problems in interpreting or applying the Act in the instant case.

11. The modification of the phrase "outside of the scope of employment" by the word "manifestly" in *W.Va.Code*, 29–12A–5(b)(2) [1986] suggests that this exception to employee immunity encompasses only conduct that is clearly, obviously, unequivocally or flagrantly outside the scope of employment. *Cf. State v. Phalen*, 192 W.Va. 267, 271, 452 S.E.2d 70, 74 (1994) (Cleckley, J., concurring) ("manifestly inadequate" language establishes high evidentiary standard).

In one jurisdiction that uses the term "manifestly outside the scope of employment" in connection with governmental tort immunity, it has been said that this standard requires a showing that an employee's act had no relation to the conduct of the governmental employer's business, or that the act was so divergent that its very character severed the employer-employee relationship. *See Thomas v. Ohio Dept. Of Rehab. and Corr.*, 48 Ohio App.3d 86, 89, 548 N.E.2d 991, 994 (1988); *see also Matlock v. Ohio Dept. of Liquor Control*, 77 Ohio Misc.2d 13, 665 N.E.2d 771 (Ct.Cl.1996); *Rogers v. Youngstown*, 61 Ohio St.3d 205, 574 N.E.2d 451 (1991); *Lightning Rod Mut. Ins. Co. v. Chatman*, 64 Ohio App.3d 781, 582 N.E.2d 1122 (1990).

(1997) (discussing what constitutes wanton or reckless conduct under this exception).

However, as the circuit court noted in the instant case, there is language in *W.Va.Code*, 29–12A–13(b) [1986] that, read literally and in isolation, appears to in certain circumstances contradict the Act's grant of authority to sue employees of political subdivisions when the "wanton or reckless" exception to employee immunity is present.

Specifically, *W.Va.Code*, 29–12A–13(b) [1986] states (in part):

> *In no instance* may an employee of a political subdivision acting within the scope of his employment be named as defendant.

(Emphasis added.) [12]

In the instant case, the plaintiff has alleged that the City's sanitation workers, acting within the scope of their employment, ran a jackhammer and a drill near the trench where Mr. Brooks was working—in reckless disregard of the fact that the City employees' activity might cause the trench to collapse.

Under these alleged facts, *W.Va.Code*, 29–12A–5(b)(2) [1986], authorizes suit against the City employees, if it is proved that their "acts or omissions were ... in a wanton or reckless manner...." *Id.*

However, the above-quoted language from *W.Va.Code*, 29–12A–13(b) [1986], taken alone and read literally, would appear to bar naming the City employees as defendants, because these allegedly "reckless" employees were acting (at least arguably) within the scope of their employment.

In addition to this apparent statutory conflict arising from the allegations in the instant case, we observe that there is a second, more general apparent statutory conflict that arises, if the language in question from *W.Va.Code*, 29–12A–13(b) [1986] is read literally as completely prohibiting suits against political subdivision employees for conduct which is alleged to be within the scope of their employment.

This second conflict occurs because such a literal construction and application of the language in question from *W.Va.Code*, 29–12A–13(b) [1986] seems to make entirely superfluous the provisions of *W.Va.Code*, 29–12A–11 [1986], which provides for the defense and indemnification of precisely those political subdivision employees who are sued as a result of conduct that is allegedly within the scope of their employment.[13]

12. *W.Va.Code*, 29–12A–13 [1986] states, in full:

§ 29–12A–13. Venue; parties; real party in interest; service of process

(a) Actions against all political subdivisions within the scope of this article shall be brought in the county in which the situs of the political subdivision is located or in the county in which the cause of action arose.

(b) Suits instituted pursuant to the provisions of this article shall name as defendant the political subdivision against which liability is sought to be established. In no instance may an employee of a political subdivision acting within the scope of his employment be named as defendant.

(c) All actions filed against a political subdivision shall be filed in the name of the real party or parties in interest and in no event may any claim be presented or recovery be had under the right of subrogation.

(d) In suits against political subdivisions, the complaint and summons shall be served in the manner prescribed by law for the rules of civil procedure.

13. *W.Va.Code*, 29–12A–11 [1986] provides:

(a)(1) Except as otherwise provided in this section, a political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding to recover damages for injury, death, or loss to persons or property allegedly caused by an act or omission of the employee if the act or omission occurred or is alleged to have occurred while the employee was acting in good faith and not manifestly outside the scope of his employment or official responsibilities. Amounts expended by a political subdivision in the defense of its employees shall be from funds appropriated for this purpose or pursuant to the contractual agreement between the insurer and the political subdivision. The duty to provide for the defense of an employee specified in this subsection does not apply in a civil action or proceeding that is commenced by or on behalf of a political subdivision.

(2) Except as otherwise provided in this section, a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment that is obtained against the employee in a state or federal court or as a result of a law of a foreign jurisdiction and that is for damages for injury, death, or loss to persons or property caused by an act or omission of such employee, if at the time of the act or omission the employee was acting in good faith and within the scope of his employment or official responsibilities.

(b)(1) A political subdivision may enter into a consent judgment or settlement and may

It would be difficult to support a construction of *W.Va.Code*, 29–12A–13(b) [1986] that would make the significant and substantial indemnification and defense provisions of *W.Va.Code*, 29–12A–11 [1986] into a superfluous nullity. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 4, *State ex rel. Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars of the United States*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

Because of these apparent statutory conflicts, we must question whether a literal reading and application should or can reasonably be given to the language in question from *W.Va.Code*, 29–12A–13(b) [1986], so as to completely prohibit the naming of employees of political subdivisions as defendants for conduct which is alleged to be within the scope of their employment, when one of the enumerated exceptions to employee immunity is alleged.

However, such a literal reading and application of the language in question from *W.Va.Code*, 29–12A–13(b) [1986] was in fact the basis of the circuit court's April 25, 1997 order in the instant case, denying summary judgment on behalf of the City (*see* note 3, *supra* ).

Moreover, such a literal reading and application was also the premise underlying the circuit court's answer to its second certified question, *supra*, which allows the plaintiff to sue the City directly when wanton and reckless misconduct by a subdivision employee is alleged, even though the statutory "worker's compensation" immunity conferred upon the City by *W.Va.Code*, 29–12A–5(a)(11) [1986] would otherwise prohibit such a suit.[14]

Thus, in addressing the second certified question and the circuit court's answer to that question, we must endeavor to resolve, in a reasonable fashion, the apparent statutory conflict that is created by a literal reading and application of the language in question from *W.Va.Code*, 29–12A–13(b) [1986]. "Where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to give effect to each." Syllabus Point 5 (in part), *Lawson v. County Com'n of Mercer County*, 199 W.Va. 77, 483 S.E.2d 77 (1996).

The City suggests that we need not follow the circuit court's approach of reading the language in question from *W.Va.Code*, 29–12A–13(b) [1986] as literally prohibiting in all instances the naming of a political subdivision employee acting within the scope of their employment as a defendant.

Rather, the City suggests that if the language in question from *W.Va.Code*, 29–12A–13(b) [1986] is taken and read together with

secure releases from liability for itself or an employee, with respect to any claim for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee.

(2) No action or appeal or any kind shall be brought by any person, including any employee or a taxpayer, with respect to the decision of a political subdivision pursuant to subdivision (1), subsection (b) of this section whether to enter into a consent judgment or settlement or to secure releases, or concerning the amount and circumstances of a consent judgment or settlement. Amounts expended for any settlement shall be from funds appropriated for this purpose or pursuant to the contractual agreement between the insurer and the political subdivision.

(c) If a political subdivision refuses to provide an employee with a defense in a civil action or proceeding as described in subdivision (1), subsection (a) of this section, the employee may file, in the circuit court of the county in which the political subdivision is located, an action seeking a determination as to the appropriateness of the refusal of the political subdivision to provide him or her with a defense under that subsection.

14. We do not find any language in the Act that creates a "wanton or reckless conduct" exception to the statutory immunities afforded to political subdivisions, as opposed to subdivision employees.

We alluded to this difference in *Michael v. Marion County Bd. of Educ.*, 198 W.Va. 523, 527 n. 10, 482 S.E.2d 140, 144 n. 10 (1996), where we noted the similarity between "deliberate intent" workers' compensation actions and the "wanton/reckless" exception to employee immunity in *W.Va.Code*, 29–12A–5(b)(2) [1986].

We said in *Michael* that the exclusion of "deliberate intent-type" actions from the exceptions to political subdivision immunity in *W.Va.Code*, 29–12A–5(a) [1986]—while the same exception to immunity is included for employees in *W.Va. Code*, 29–12A–5(b)(2) [1986] suggests a deliberate choice by the Legislature "not to include this limitation for the political subdivisions." *Id.*

the previous sentence in that subsection, to-wit:

> Suits instituted pursuant to the provisions of this article shall name as defendant the political subdivision against which liability is sought to be established. In no instance may an employee of a political subdivision acting within the scope of his employment be named as defendant[,]

this statutory subsection may be read as a whole, and as prohibiting only the naming of an employee of a political subdivision acting within the scope of employment as a defendant, *in order to establish the direct liability of the political subdivision.*

Under this construction of the statutory language, naming an employee of a political subdivision as a defendant for purposes of establishing *the employee's* liability—as opposed to the subdivision's liability—would not

be barred, if one of the statutory exceptions to employee immunity in *W.Va.Code,* 29–12A–5(b) [1986] is present.

We find that this narrower construction of the language of *W.Va.Code,* 29–12A–13(b) [1986], taken in its entirety, is grammatically and logically plausible. It is not strained and it is reasonable. Substantively, this construction resolves the apparent statutory conflict, apparently without creating any conflicts with other portions of the Act.

This construction is also (with a minor exception [15]) consistent with our prior cases in this area recognizing the Act's grant of authority to name employees of political subdivisions as defendants under certain defined circumstances.

We therefore adopt this approach.[16]

15. *But see Hose v. Berkeley County Planning Com'n,* 194 W.Va. 515, 520 n. 5, 460 S.E.2d 761, 766 n. 5 (1995), where we stated in *dicta* that we agreed with a circuit court's finding that *W.Va. Code,* 29–12A–13(b) [1986] in all cases prohibited naming an employee of a political subdivision acting within the scope of employment as a defendant in a civil action. That statement, in light of our holding today, was incorrect. *See also* discussion of *Randall, supra,* at note 16 *infra.*

16. The City also suggests that we hold that all of the conduct which falls within the "wanton/reckless" exception to employee immunity in *W.Va. Code,* 29–12A–5(b)(2) [1986] should be deemed as a matter of law to be "outside the scope of employment." Under this approach, a claim against an employee based on an allegation of reckless or wanton misconduct would not implicate the (literally read) prohibitory language of *W.Va.Code,* 29–12A–13(b) [1986]—because such conduct would be *per se* "outside the scope of employment."

However, we have not followed such a "deeming" or *per se* approach to determining whether conduct falls within the "scope of employment." Moreover, there is substantial authority to the effect that wanton, reckless or even intentional misconduct may not necessarily be outside the scope of employment. *See, e.g., Nees v. Julian Goldman Stores, Inc.,* 106 W.Va. 502, 146 S.E. 61 (1928) (debt collector who attacked pregnant woman in home of debtor, causing miscarriage, may have been acting within the scope of employment); *see also Stone v. Rudolph,* 127 W.Va. 335, 32 S.E.2d 742 (1945) (employer could be liable for willful and wanton misconduct by an employee acting within the general scope of his authority); *see also Cremeans v. Maynard,* 162 W.Va. 74, 246 S.E.2d 253 (1978) (factual issue as to whether shooting of pickets was within the

scope of employment); *see also Harless v. First Nat. Bank in Fairmont,* 162 W.Va. 116, 127, 246 S.E.2d 270, 276–277 (1978) (pleadings created issue of fact whether employees alleged to have committed intentional and outrageous conduct were acting within the scope of their employment); *cf. Griffith v. George Transfer and Rigging, Inc.,* 157 W.Va. 316, 326, 201 S.E.2d 281, 288 (1973) ("scope of employment" is a relative term and requires a consideration of surrounding circumstances, and is ordinarily determined by the jury); *in accord, Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958); *Levine v. Peoples Broadcasting Corp.,* 149 W.Va. 256, 140 S.E.2d 438 (1965). *See also Crockett v. United States,* 116 F.2d 646 (4th Cir.1940), *cert. denied,* 314 U.S. 619, 62 S.Ct. 57, 86 L.Ed. 498 (1941) (applying West Virginia law, drunk driver was acting within the scope of employment); *Fox v. Deese,* 234 Va. 412, 423–25, 362 S.E.2d 699, 706 (1987) (governmental officials can commit an intentional tort within the scope of their employment); *Gutierrez de Martinez v. Drug Enforcement Admin.,* 111 F.3d 1148, 1156–1157 (4th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 335, 139 L.Ed.2d 260 (under Virginia law, a fairly broad view of the scope of employment is taken.)

In light of the foregoing discussion, a statement made in *Randall v. Fairmont City Police Dept.,* 186 W.Va. 336, 348, 412 S.E.2d 737, 749 (1991), *see* note 9 *supra,* must be questioned. In *Randall,* this Court stated that a complaint sufficiently stated (in the alternative) a claim under *W.Va.Code,* 29–12A–5(b)(2) [1986] against the employees of a political subdivision, by alleging that the employees' "ignoring of an obviously dangerous situation, contrary to the duties of their employment," was "manifestly outside the employees' scope of employment." *Id.* This statement in *Randall* was not part of or necessary to the holding in that case, and the issue of

Consequently, we hold that *W.Va.Code*, 29–12A–13(b) [1986] prohibits the naming of an employee of a political subdivision acting within the scope of employment as a defendant for the purpose of directly establishing the liability of a political subdivision. However, *W.Va.Code*, 29–12A–13(b) [1986] does not prohibit the naming of an employee of a political. subdivision acting within the scope of employment as a defendant for purposes of establishing the employee's liability, when one or more of the statutory exceptions in *W.Va.Code*, 29–12A–5(b) [1986] to employee immunity is present.

Because of this holding, the premise of the circuit court's answer to its second certified question—that there is in all instances an absolute bar to naming an employee of a political subdivision acting within the scope of employment as a defendant—is erroneous.

■ Therefore, we reword the circuit court's second certified question in the following fashion: [17]

May a political subdivision be directly sued and named as a defendant, although the plaintiff's claim against the subdivision is covered by workers' compensation and would otherwise be barred by *W.Va.Code*, 29–12A–5(a)(11) (1986), where the plaintiff alleges that the employees of the political subdivision acted in a "wanton or reckless manner" under *W.Va.Code*, 29–12A–5(b)(2) (1986)?

And we answer this question in the negative.

## IV.

### *Conclusion*

The instant case is dismissed from the docket of this Court and all proceedings are remanded to the Circuit Court of Hancock

County for further proceedings in conformance with this opinion.

Certified questions answered.

---

the extent of the scope of employment was not discussed in *Randall*. It would be erroneous to conclude from this statement that acting contrary to the duties of one's employment is always the same as acting outside the scope of one's employment.

**17.** Upon receiving certified questions, we retain the power to reformulate the questions certified. We stated in Syllabus Point 3 of *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993):

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* and *W.Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.