408 S.E.2d 79

**MARKS CONSTRUCTION COMPANY, INC., a West Virginia corporation, Plaintiff Below, Appellant,**

**v.**

**The BOARD OF EDUCATION OF the COUNTY OF WOOD, a public corporation, C.E. White, Paul White, G.E. White and Karen White, d/b/a White Properties, and Tri–State Roofing and Sheet Metal Company, a West Virginia corporation, Defendants Below, Appellees.**

**No. 19900.**

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 18, 1991.

 

John Lewis Marks, Jr., Clarksburg, for appellant.

Patricia A. Morrison, Parkersburg, for appellee Bd. of Educ.

James T. Cooper, Stephen M. Fowler, Charleston, for appellee White Properties.

Daniel A. Ruley, Jr., Parkersburg, for appellees Tri–State Roofing & Sheet Metal Co.

PER CURIAM:

This is an appeal by Marks Construction Company, Inc. from three final orders of the Circuit Court of Wood County entering judgment in favor of the appellees. The appellant contends that the lower court erred in granting judgment on the pleadings in favor of C.E. White, Paul White, G.E. White, and Karen White, d/b/a White Properties, and in granting summary judgment in favor of Tri–State Roofing and Sheet Metal Company and the Wood County Board of Education (hereinafter referred to as Board of Education). We agree with the contentions of the appellant, reverse the decision of the Circuit Court of Wood County, and remand this action for further proceedings on the merits of the appellant's claim.

I

The appellant entered into a written contract in April 1985 with the Board of Education to perform work as a "general trades contractor" in the construction of a school building in Parkersburg, West Virginia. The Board of Education, reserving the right to award separate contracts for specific aspects of the construction, awarded a contract to appellee White Properties for site preparation and a contract to appellee Tri–State for mechanical contracting services. In May 1988, the appellant initiated a civil action against White Properties, Tri–State, and the Board of Education based upon a series of delays and damages it purportedly suffered due to the alleged negligence of White Properties and Tri–State. The action against the Board of Education was primarily premised upon the

Board of Education's alleged failure to force the two contractors to comply with time schedules.

## II

The appellant contends that White Properties represented that its site preparation would be completed by May 1, 1985. Such preparation was not actually completed until June 15, 1985, causing a one and one-half month delay in the appellant's ability to initiate construction upon the property. The appellant also contends that it suffered a delay caused by White Properties from March 1986 to August 1986, resulting in site access delay problems and increased access road maintenance costs. In support of its claim against White Properties, the appellant cites language in its contract with the Board of Education providing that each contractor was to complete its work in a manner which would not interfere with, impede, or affect the progress or completion of work by the other contractors.[1]

In response, White Properties raised a statute of limitations issue with regard to the time at which the appellant became aware of injuries resulting from White Properties' alleged delays. White Properties also claims that the appellant did not properly identify White Properties in its original complaint and that the amended complaint did not relate back to the time of the filing of the original complaint.[2]

White Properties filed a motion for summary judgment on November 21, 1989. No hearing was ever scheduled, and the motion was granted on December 18, 1989, and treated as a motion for judgment on the pleadings. The lower court indicated that the appellant's claim against White Properties was barred by the statute of limitations and that the appellant could not proceed on a contract theory due to lack of privity between the appellant and White Properties. The appellant contends that it should have been provided with an opportunity to develop a record regarding the issue of whether its claim against White Properties was barred by the statute of limitations and with regard to the nature of the relationship between the appellant and White Properties.

■ Pursuant to Rule 15(c) of the West Virginia Rules of Civil Procedure, an amended complaint relates back where certain conditions are satisfied. West Virginia Rule of Civil Procedure 15(c) provides the following:

> (c) *Relation back of amendments.* – Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his

---

**1.** Specifically, the contract provides that "[e]ach contractor ... will diligently prosecute said work and every part thereof to completion in such a way as to not interfere with, impede or affect the progress and completion of the scheduled work or that of any or all of the other subcontractors or prime contractors."

  The appellant contends that this provision entitles it to proceed on either a negligence or a contract theory. The contractors did not enter into contracts with one another. The only three contractual relationships are between the Board of Education and White, the Board of Education and Tri–State, and the Board of Education and the appellant. The appellant maintains that the silence of the contract concerning the relationship among separate contractors is sufficient to permit an action not only on a negligence theory, but also on a contractual theory since each contractor is an intended beneficiary of the contract. *See e.g.* Syl. Pt. 2, *Woodford v. Glenville State College Hous. Corp.,* 159 W.Va. 442, 225 S.E.2d 671 (1976).

**2.** The appellant apparently mistakenly believed that White Properties was a corporation and later learned that White Properties was actually a partnership. The appellant contends that he had encountered difficulty establishing the true identity of White Properties due to White Properties' failure to file an assumed name certificate as required by W.Va.Code § 47–8–2 (1986). An amended complaint was filed on August 16, 1988, properly naming the parties.

defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

According to uncontroverted facts, the appellant received a letter from the attorney representing White Properties on May 27, 1988, shortly after the original complaint was filed. That May 27, 1988, correspondence referenced the Wood County Special Education facility being construed by the parties, and the attorney for White Properties indicated that he would be representing the personal interests of the Whites.

In the syllabus point of *Maxwell v. Eastern Associated Coal Corp.*, 183 W.Va. 70, 394 S.E.2d 54 (1990), we explained the following:

> Where a plaintiff seeks to change a party defendant by a motion to amend a complaint under Rule 15(c) of the West Virginia Rules of Civil Procedure, the amendment will relate back to the filing of the original complaint only if the proposed new party defendant, prior to the running of the statute of limitations, received such notice of the institution of the original action that he will not be prejudiced in maintaining his defense on the merits and that he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

We find that White Properties had knowledge of the pending suit against it by May 27, 1988, well before the amended complaint was filed on August 16, 1988. Furthermore, we find that White Properties had such notice of the institution of the original action that it will not be prejudiced in maintaining a defense. We further believe that White Properties knew or should have known that, but for a mistake concerning its identity, the action would originally have been properly brought against it. Consequently, we hold that the amended complaint relates back to the date of the filing of the original complaint. Furthermore, the appellant claims a continuing injury to the extent that the cause of action would accrue and the statute of limitations would begin to run only from the date of the last injury or where the tortious overt acts cease. *See Handley v. Town of Shinnston*, 169 W.Va. 617, 619, 289 S.E.2d 201, 202 (1982). It has often been stated that the point in time when a plaintiff knew, or by the exercise of reasonable diligence should have known, of his injury and its cause is a question of fact to be determined by the jury. *See e.g., Pauley v. Combustion Eng'g Inc.*, 528 F.Supp. 759, 765 (S.D.W.Va.1981).

### III

The appellant's claim against Tri–State involves allegations that Tri–State caused the appellant delay by failing to complete air conditioning and ventilation work prior to a two-month plumber's strike which began on June 1, 1986. The appellant, in reliance upon Tri–State's alleged representation that air conditioning, heating, and ventilation would be installed by the end of May 1985, had placed doors and ceiling tiles in the building.[3] Tri–State's failure to finish the work allegedly resulted in high humidity and significant damage to such interior finish work which had already been performed by the appellant.

The appellant contends that Tri–State knew or should have known of a possibility of a plumbers' strike and should have alerted the appellant to that potential. The appellant's primary contention regarding Tri–State's liability is that the damages suffered by the appellant were foreseeable and were attributable to Tri–State's inaction. The appellant also explains that had Tri–State disclosed the possibility of a plumbers' strike, the appellant could have delayed placing the doors and ceiling tiles, thereby avoiding damage.

---

**3.** Tri–State contends that it did not explicitly state that the air conditioning, heating, and ventilation work would be completed and operable by May 1985. Tri–State further contends that the appellant had the responsibility to provide temporary air conditioning, heating, or otherwise adequate ventilation to prevent the high humidity from damaging the appellant's structures.

The lower court awarded summary judgment in favor of Tri–State by order dated February 23, 1990. The lower court reasoned that the facts as stated by the appellant did not support a cause of action in negligence. On the contrary, the appellant again contends, as it did against White Properties, that its claim is supported by either negligence or contract principles.

## IV

The appellant's claim against the Board of Education is premised primarily upon the appellant's allegation that the Board of Education reserved all authority to control and sanction contractors working on the project, a power which allegedly included the ability to force the contractors to comply with time schedules. The Board of Education contends that the contract between it and the appellant provided for the appellant to coordinate the work among the contractors. In response, the appellant contends that any difference in interpretation of contractual language is due to ambiguities therein.[4] The appellant further contends that although it had the contractual right to coordinate the work, the Board of Education reserved the power to compel performance of the separate contractors.

The Board of Education cross-claimed against White Properties and Tri–State claiming that their negligence and dereliction in performance caused damage to the appellant and had the "predictable result of disrupting a delicately balanced timetable for construction of the project." A motion for summary judgment in favor of the Board of Education was granted on June 22, 1990.

## V

" 'A motion for summary judgment shall be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. pt. 1, *Karnell v. Nutting,* [166] W.Va. [269], 273 S.E.2d 93 (1980) citing syl. pt. 3, *Aetna Casualty and Surety Co. v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Perlick and Co. v. Lakeview Creditor's Trustee Comm.,* 171 W.Va. 195, 298 S.E.2d 228 (1982).

Similarly, in *Calvert Fire Ins. Co. v. Bauer,* 175 W.Va. 286, 287, 332 S.E.2d 586, 588, (1985), we stated:

Courts generally adhere to a rather restrictive standard in ruling on motions for judgment on the pleadings under Rule 12(c). The motion will not be granted unless the movant clearly establishes that no material issue of fact remains for resolution and that he is entitled to judgment as a matter of law.

Summary judgment is a mechanism designed to effect a prompt resolution of controversies where there is no real dispute as to salient facts or if only a question of law is involved. *See Oakes v. Monongahela Power Co.,* 158 W.Va. 18, 207 S.E.2d 191 (1974). We have consistently adopted a conservative stance toward summary judgment as a means of final resolution and have explained that "[a] party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances." *Aetna Casualty & Surety Co.,* 148 W.Va. at 171, 133 S.E.2d at 777 (citing 3 Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Sec-

---

**4.** The applicable contractual provisions state, in part, that "[t]he General Trades Contractor in conjunction with the other prime contractors shall prepare a construction progress schedule for review and approval by the Architect. Each contractor or subcontractor shall schedule their work thereafter to conform to this schedule." Furthermore, the contract provides that

Should any prime contractor fail to ... [complete his work in a manner which does not

affect the progress of other subcontractors] in the opinion of the General Trades Contractor, ... he shall notify the Owner and Architect by telephone and confirm his statements in writing to the Architect. Upon review and consultation with all parties involved such action as may be deemed necessary by the Owner, consistent with A.I.A. Document A–201 will be taken.

tion 1234). *Accord Wheeling Kitchen Equip. Co. v. R. & R. Sewing Center, Inc.*, 154 W.Va. 715, 719, 179 S.E.2d 587, 590 (1971).

We have also clearly expressed our approach to reviewing a lower court's determination regarding whether a genuine issue of material fact exists and have stated that we will construe the facts in a light most favorable to the losing party. *Alpine Property Owners Ass'n Mountaintop Dev. Co.*, 179 W.Va. 12, 17, 365 S.E.2d 57, 62 (1987) (quoting *Masinter v. Webco Co.*, 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980)). Moreover, we have recognized that, "as a general proposition, issues of negligence are not susceptible of summary adjudication" due to the fact that it is within the jury's province to determine conflicting facts. *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 390, 135 S.E.2d 236, 242 (1964); *see also Board of Educ. v. Van Buren & Firestone, Architects, Inc.*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980) (hereinafter referred to as *Van Buren*).

■ In *Van Buren*, a case quite similar to the present one, the Ohio County Board of Education brought an action against eight parties which had entered into contracts for the construction of a new high school. The Circuit Court of Ohio County granted summary judgment in favor of the contractor, engineer, and bonding company, and this Court reversed those orders of summary judgment. 165 W.Va. at 143, 267 S.E.2d at 441–42. In doing so, we reiterated our guiding principles of the appropriateness of summary judgment and explained, as discussed above, that we have "traditionally viewed summary judgment with reservations and have required that the facts of the case be viewed in a light most favorable to the party against whom the judgment was rendered." *Id.* We noted that the *Van Buren* case, not unlike the case at bar, appeared to "involve some very complicated interlocking relationships between architects, engineers, and contractors." *Id.* 165 W.Va. at 144, 267 S.E.2d at 443.

In the present case, the appellant has presented us with a multitude of factual issues involving the interrelationship among the Board of Education, the appel-lant, White Properties, and Tri–State. Likewise, the Board of Education, White Properties, and Tri–State have presented thorough briefings of their respective positions. We do not purport to address each of the issues raised by the parties, and we decline to attempt to resolve each inconsistency at this level.

Consistent with the standards of review firmly established by this Court, we conclude that this matter was not appropriately decided by summary judgment and judgment on the pleadings due to the existence of genuine issues of material fact. The lower court's resolution by those means was improper and premature. Consequently, we reverse the decision of the Circuit Court of Wood County and remand this matter for full adjudication on the merits of the appellant's claim.

Reversed and remanded.