584 S.E.2d 531

Glenda BROOKS, Administratrix of the Estate of William Richard Brooks, deceased, Plaintiff Below, Appellant

v.

Charles ISINGHOOD, dba Charles Isinghood Excavating, Ronald Jones, James Cottrill, Kenneth Hartley, Jack Rice and Robert Laughlin, Defendants Below, Appellees.

No. 30695.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 2003.

Decided June 27, 2003.

Frank Cuomo, Jason A. Cuomo, Cuomo & Cuomo, Wellsburg, for Appellant.

Ancil G. Ramey, Steptoe & Johnson, PLLC, Charleston, for Appellee Laughlin.

S. Jane Anderson, Richard D. Klaber, Dickie, McCamey & Chilcote, Wheeling, for Appellees Ronald Jones, Kenneth Hartley, Jack Rice and James Cottrill.

William E. Galloway, Weirton, for Appellee Charles Isinghood.

STARCHER, Chief Justice:

In this appeal from the Circuit Court of Hancock County, we are asked to review a circuit court's dismissal of an amended complaint, on the ground that the amended complaint was filed after the expiration of the statute of limitation. After consideration of the arguments of the parties, we conclude that under Rule 15 of the *West Virginia Rules of Civil Procedure*, the amended complaint "relates back" to the date the original complaint was filed—a date within the limitation period—and thereby avoids the effects of the statute of limitation.

As set forth below, we reverse the circuit court's dismissal of the amended complaint and remand the case for further proceedings.

## I.

### *Facts & Background*

On June 7, 1994, decedent William Brooks was employed by defendant-below Charles Isinghood, d/b/a Charles Isinghood Excavating, to dig a trench along a city street in Weirton, West Virginia. Several employees of the City of Weirton—the appellees in this case—were performing work around the trench. While Mr. Brooks was at the bottom of the trench, the walls collapsed, and Mr. Brooks died.

Mr. Brooks' widow, appellant Glenda Brooks, alleges that the City's employees engaged in wanton and reckless conduct in disregard of Mr. Brooks' safety, and alleges that their conduct was partly responsible for the collapse of the trench and Mr. Brooks' death. The appellant's attorney contends that, before he filed a lawsuit against the City or its employees, he examined the Governmental Tort Claims and Insurance Reform Act ("the Act"), the statute governing lawsuits against political subdivisions such as the City. *See W.Va.Code,* 29–12A–1 to –18. On the basis of language contained in the Act, the appellant's attorney believed he could only name the City in any lawsuit, and could not name the individual employees. Specifically, the appellant's counsel contends he was guided by *W.Va.Code,* 29–12A–13(b) [1986], which states that lawsuits against political subdivisions such as the City of Weirton "shall name as defendant the political subdivision," but also states that "[i]n no instance may an employee of a political subdivision acting within the scope of his employment be named as defendant." [1]

Accordingly, in April 1995 the appellant filed a wrongful death action against the City of Weirton.[2] The appellant's complaint alleged, *inter alia,* that the City, through certain employees acting within the scope of their employment with the City, acted recklessly and in willful disregard of the safety of Mr. Brooks. The appellant named only the City as a defendant, and did not name any of the individual City employees in her complaint.

Thus began a long and tortuous procedural history in which the circuit court attempted to clarify the proper defendants and causes of action. On October 11, 1995, the City filed a motion for summary judgment, arguing that because the appellant had received workers' compensation benefits as a result of her husband's death, the City was immune from suit under the Act. The Act, specifically *W.Va.Code,* 29–12A–5(a)(11) [1986], states:

> (a) A political subdivision is immune from liability if a loss or claim results from: . . .
>
> (11) Any claim covered by any workers' compensation law or any employer's liability law; . . .

In an order dated April 25, 1997, the circuit court partially agreed with the City's argument and reasoned that under the Act, the City was directly immune from suit because the appellant's cause of action against the City was also "covered by" a workers' compensation law. However, the circuit court declined to grant summary judgment to the City, holding that the City could still be held indirectly responsible. A different portion of the Act, *W.Va.Code,* 29–12A–5(b), states that an employee of a political subdivision can be held liable for actions that are done "with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" [3] The

---

1. *W.Va.Code,* 29–12A–13(b) [1986] states:

   (b) Suits instituted pursuant to the provisions of this article shall name as defendant the political subdivision against which liability is sought to be established. In no instance may an employee of a political subdivision acting within the scope of his employment be named as defendant.

2. The appellant also brought a "deliberate intention" suit against Mr. Brooks' employer, Charles Isinghood, d/b/a Charles Isinghood Excavating. *See W.Va.Code,* 23–4–2 [1994]. That cause of action is not at issue in this case.

3. *W.Va.Code,* 29–12A–5(b) [1986] states:

   (b) An employee of a political subdivision is immune from liability unless one of the following applies:

   (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;

   (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

   (3) Liability is expressly imposed upon the employee by a provision of this code.

circuit court ruled that through the operation of this statute, the City could be held indirectly liable for the "wanton or reckless" acts of its employees committed within the scope of their employment. However, under *W.Va. Code,* 29–12A–13(b)—the same statute that the appellant's attorney read as prohibiting actions directly against City employees—the circuit court concluded that any suit arising from the "wanton or reckless" actions of City employees must be brought in the name of the City and not against the individual employees themselves.[4]

Thereafter, the circuit court certified questions to this Court asking, *inter alia,* whether a plaintiff could name a political subdivision such as the City as a defendant in a tort action, where the plaintiff's claim against the political subdivision was barred by the provisions of the Act, but the plaintiff's claims against the employees of the political subdivision remained viable because the employees were alleged to have acted in a wanton or reckless manner in the course of their employment. In answering the question, the circuit court concluded that such a plaintiff was required by the Act to name only the political subdivision, and was prohibited from naming the individual employees of the political subdivision.

In *Brooks v. City of Weirton,* 202 W.Va. 246, 503 S.E.2d 814 (1998) (*"Brooks I"*), this Court reached a different conclusion. We held that if a political subdivision was immune under the provisions of the Act, then the political subdivision could *not* be directly named as a defendant under the Act. Instead, the Court indicated that if an employee's conduct was actionable under the Act, and even if the political subdivision was financially responsible for the employee's conduct, then any lawsuits regarding the employee must proceed in the employee's name. This Court stated:

In the instant case, the plaintiff has alleged that the City's sanitation workers, acting within the scope of their employment, ran a jackhammer and a drill near the trench where Mr. Brooks was working—in reckless disregard of the fact that the City employees' activity might cause the trench to collapse.

Under these alleged facts, *W.Va.Code,* 29–12A–5(b)(2) [1986], authorizes suit against the City employees, if it is proved that their "acts or omissions were ... in a wanton or reckless manner...."

202 W.Va. at 255, 503 S.E.2d at 823. The Court therefore held, in Syllabus Point 5, that:

> *W.Va.Code,* 29–12A–13(b) [1986] prohibits the naming of an employee of a political subdivision acting within the scope of employment as a defendant for the purpose of directly establishing the liability of a political subdivision. However, *W.Va.Code,* 29–12A–13(b) [1986] does not prohibit the naming of an employee of a political subdivision acting within the scope of employment as a defendant for purposes of establishing the employee's liability, when one or more of the statutory exceptions in *W.Va.Code,* 29–12A–5(b) [1986] to employee immunity is present.

The Court's opinion in *Brooks I* was issued on May 19, 1998. On June 19, 1998, the appellant sought and was granted leave by the circuit court to amend her complaint to name the appellees, five individual employees of the City of Weirton who were alleged to have caused—through wanton or reckless conduct—the death of Mr. Brooks. The amended complaint was filed over four years after Mr. Brooks' June 7, 1994 death.

The appellees filed a motion to dismiss the amended complaint, contending that the causes of action against the appellees were barred by the two-year statute of limitation. *See W.Va.Code,* 55–2–12 [1959] ("Every per-

---

4. The circuit court stated:

The Court concludes as a matter of law that pursuant to W.Va.Code, 29–12A–13, if a Plaintiff alleges acts or omissions of an employee of a political subdivision allegedly done with malicious purpose, in bad faith, or in a wanton or reckless manner but done within the scope of his or her employment with said political sub-

division, said cause of action must be brought against the political subdivision itself, not the individual employee. Further, the Court concludes, as a matter of law, that said action against the political subdivision is not based upon common law theories such as *respondeat superior* or vicarious liability, but is instead a statutorily-imposed liability.

sonal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]").

The circuit court, at a hearing in November 1998 and in an order dated December 18, 2001, concluded that the appellant's amended complaint was filed after the statute of limitation had expired. However, the circuit court noted that under Rule 15 of the *West Virginia Rules of Civil Procedure,* if a plaintiff makes a "mistake concerning the identity of the proper party" in a complaint, then the plaintiff's amendment to the complaint adding the proper defendant "relates back to the date of the original pleading," and circumvents the statute of limitation.

The appellees argued that "mistake" in Rule 15 can only mean a mistake of fact, a misnomer, not a mistake of law. The circuit court agreed, and reasoned that the appellant's attorney chose not to sue the individual appellees because of a misinterpretation of the Act. The circuit court found that the appellant filed the amended complaint against the appellees because a judicial decision rendered the appellees amenable to suit, not because a mistake was made by the appellant factually identifying who to sue. In other words, it appears the circuit court agreed with the appellees that the appellant made a mistake of law, not a mistake of fact. The circuit court further concluded that an appellate court decision that renders an additional party amendable to suit is not sufficient to permit the new party to be added after the expiration of the statute of limitation. Accordingly, the circuit court concluded that the appellant's amended complaint did not "relate back" for purposes of avoiding the statute of limitation, and that the action against the City employees was barred.

The appellant now appeals the circuit court's order.

## II.

### Standard of Review

■ The appellant is appealing an order dismissing the appellant's amended complaint. "Appellate review of a circuit court's

order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). Further, we construe the factual allegations in the light most favorable to the plaintiff. *Id.,* 194 W.Va. at 776, 461 S.E.2d at 522.

■ The appellant's arguments challenge the circuit court's interpretation of Rule 15(c) of the *West Virginia Rules of Civil Procedure* [1998], the rule which sets forth the procedure for a party to amend a pleading after the expiration of a statute of limitation and, if certain conditions are met, avoid the effects of the statute of limitation. "An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review." Syllabus Point 4, *Keesecker v. Bird,* 200 W.Va. 667, 490 S.E.2d 754 (1997).

■ We have previously noted that we give substantial weight to federal cases in determining the meaning and scope of our rules. *See, e.g., Williams v. Precision Coil,* 194 W.Va. 52, 58 n. 6, 459 S.E.2d 329, 335 n. 6 (1995); *Painter v. Peavy,* 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 761 n. 6 (1994). This does not mean that our "legal analysis in this area should amount to nothing more than Pavlovian responses to federal decisional law." *Stone v. St. Joseph's Hosp. of Parkersburg,* 208 W.Va. 91, 112, 538 S.E.2d 389, 410 (2000) (McGraw, J., concurring, in part, and dissenting, in part) (holding that West Virginia disability discrimination law "is not mechanically tied to federal disability discrimination jurisprudence."). Rather, a federal case interpreting a federal counterpart to a West Virginia rule of procedure may be persuasive, but it is not binding or controlling. *See, e.g., Dougan v. Gustaveson,* 108 Nev. 517, 520–21, 835 P.2d 795, 797 (1992) ("The interpretation of a federal counterpart to a Nevada Rule of Civil Procedure is not controlling, but may be persuasive."); *Darling v. Champion Home Builders Co.,* 96 Wash.2d 701, 706, 638 P.2d 1249, 1251 (1982) ("Although we may look to federal decisions for guidance in interpreting our civil rules

... we are by no means bound by those decisions.").

## III.

### Discussion

It is undisputed in this case that the appellant attempted to change the parties in her lawsuit after the statute of limitation had expired. "Rule 15 is the only vehicle available for a plaintiff to amend the complaint to change or add a defendant after the statute of limitations has run." James Wm. Moore, 3 *Moore's Federal Practice 3d*, § 15.19[3][a] at 15–84 (Matthew Bender, 1997). The appellant argues that Rule 15 allows her to amend her complaint to add the appellees, and further argues that the "relation-back" provisions of Rule 15(c) apply to save her claim against the appellees from the two-year statute of limitation. Rule 15(c) provides:

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when:

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action; or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing paragraph (2) is satisfied and, within the period provided by Rule 4(k) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have [been] brought against the party.

In sum, the appellant argues that her attorney gave a fair but mistaken interpretation to a statute, and based upon that mistake brought an action against the wrong party. The appellant contends that when the mistake was discovered, she promptly amended her complaint to sue "the proper party," *i.e.*, the appellees. She further contends that the appellees had notice of the original complaint and will not be prejudiced in maintaining a defense by the amendment. Under Rule 15(c), the appellant asserts that the amended complaint should "relate back" to the date the original complaint was filed to avoid the effect of the statute of limitation.

The appellees argue that the appellant's decision not to name any City employees in her initial complaint was not a "mistake" within the meaning of Rule 15(c). The appellees state:

The classic example of mistake is when a plaintiff misnames or misidentifies but correctly serves a party. In these cases, the defendant is already before the court.... In contrast, when the amendment changes the person or entity sued, a court should not consider it a misnomer because the amendment substitutes a new party rather than corrects the identification of an existing party.

*Quoting* 3 *Moore's Federal Practice 3d*, § 15.19[3][d] at 15–90. The appellees assert that the instant case is simply not a case of misnomer or mistake of identity. The appellees argue that the appellant deliberately— based upon a misinterpretation of a law— chose to sue the City and not sue the appellee City employees. The appellees fiercely argues that Rule 15(c) applies only to mistakes of fact, and never applies to mistakes of law.

In response, the appellant argues that a "mistake" under Rule 15 is not limited to case of "misnomer," and argues that when a plaintiff receives a favorable change in the law that occurred after the expiration of the limitation period, the plaintiff may amend a complaint to add a defendant.[5] The appellant asserts that it should make no difference whether the amendment to be related back corrects a mistake of fact or of law.

---

**5.** To be clear, we resolve the instant case solely upon the language of Rule 15(c), and do not reach the appellant's argument that a party may be added to an action after the expiration of the statute of limitation solely because a judicial decision has rendered that party amenable to suit.

We begin by examining the purposes of Rule 15, and the proper approach courts should use in applying the rule. Rule 15, by its own terms, is to be construed liberally in order to promote the consideration of claims on their merits. Rule 15(a) states that leave to amend a complaint should be "freely given when justice so requires," and we have held that amendments to pleadings should rarely be denied. "The purpose of this policy statement is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments." Franklin D. Cleckley, *et al.*, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 15(a) at 334 [Juris Publishing, 2002]. *See also*, Syllabus Point 3, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973). "The goal behind Rule 15, as with all the Rules of Civil Procedure, is to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." *Doyle v. Frost*, 49 S.W.3d 853, 856 (Tenn.2001) (citations omitted).[6] *See also*, *Perdue v. S.J. Groves & Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968) (recognizing liberality to amend pleadings existed prior to the adoption of the *West Virginia Rules of Civil Procedure*).

The instant case centers on Rule 15(c)(3), and the appellant's attempt to "change the party . . . against whom a claim is asserted" after the statute of limitation has expired. Under Rule 15(c)(3), "chang[ing] the party" includes adding, dropping or substituting a party. 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1498 at 126 (1990).

"[A]lthough the objective of Rule 15 as a whole is to allow the liberal use of amendments to implement the policy of en-couraging litigation on the merits, Rule 15(c) imposes restrictions in deference to the equally important purposes of the statute of limitations." *Peneschi v. National Steel Corp.*, 170 W.Va. 511, 523, 295 S.E.2d 1, 13 (1982). "Rule 15 allows a party to amend despite the running of an applicable state statute of limitations when parties are sufficiently on notice of the facts and claims that gave rise to the proposed amendment." 3 *Moore's Federal Practice 3d*, § 15.19[1] at 15–78. "The principal purpose of Rule 15(c) is to enable a plaintiff to correct a pleading error after the statute of limitations has run if the correction will not prejudice his adversary in any way." *Schiavone v. Fortune*, 477 U.S. 21, 38, 106 S.Ct. 2379, 2389, 91 L.Ed.2d 18, 33 (1986) (Stevens, J., dissenting).

When an amendment seeks to change a party to a lawsuit, if the requirements of Rule 15(c)(3) are met, then the claim asserted against that new party will be considered filed on the date of the original pleading. Rule 15(c) "expressly provides that an amendment that changes the parties *relates back* to the date of the original pleading, thereby avoiding the effect of the statute of limitations if—*but only if*—certain conditions are satisfied." *Peneschi*, 170 W.Va. at 523, 295 S.E.2d at 13.

We briefly discussed the conditions a plaintiff must satisfy under Rule 15 for an amendment changing a *plaintiff* to "relate back" and avoid a statute of limitation in *Plum v. Mitter*, 157 W.Va. 773, 204 S.E.2d 8 (1974). We stated, in Syllabus Point 2, that:

A motion for leave to amend a complaint under Rule 15(a) to add additional parties plaintiff after the applicable statute of limitations has run is governed by the following criteria: (1) Whether the claim asserted by the added parties arose out of "the

---

6. In arguing for the liberal amendment of pleadings, one commentator states:

Denying relation back for amendments that add a defendant or substitute a named defendant for a [John] Doe rewards defendants who obfuscate in order to prevent plaintiffs from determining their identity. This kind of defense tactic, whether intentional or inadvertent, occurs on occasion in civil rights claims brought against police or correctional officers. In most other kinds of lawsuits, the plaintiff has alternative means of finding out the defendant's true identity.. .In contrast, in suits against police or correctional officers, a plaintiff's ability to name the correct defendant is dependent upon the police or correctional department's willingness to comply with discovery requests and supply the officer's name. Rebecca S. Engrav, "Relation Back of Amendments Naming Previously Unnamed Defendants Under Federal Rule of Civil Procedure 15(c)," 89 Cal.L.Rev. 1549, 1579 [2001].

conduct, transaction or occurrence" as required in Rule 15(c); (2) whether the defendant has received adequate notice of the claim against him; (3) whether the defendant would be unfairly prejudiced; and (4) whether there is an "identity of interest" between the original party plaintiff and the added parties.

In *Plum v. Mitter*, the defendant asserted that the injured infant-plaintiff named in the original complaint could not assert a claim for medical expenses caused by the defendant's negligence because, as a dependent, the infant-plaintiff's parents were responsible for such expenses. This Court concluded that the infant-plaintiff could amend his complaint, after the expiration of the statute of limitation, to add the infant's parents as parties.

██ Amendments to change a party under Rule 15 include amendments to add, drop, or substitute *defendants* as well. Under Rule 15(c)(3), an amendment to a complaint changing a defendant or the naming of a defendant will relate back to the date the plaintiff filed the original complaint if: (1) the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence as that asserted in the original complaint; (2) the defendant named in the amended complaint received notice of the filing of the original complaint and is not prejudiced in maintaining a defense by the delay in being named; (3) the defendant either knew or should have known that he or she would have been named in the original complaint had it not been for a mistake; and (4) notice of the action, and knowledge or potential knowledge of the mistake, was received by the defendant within the period prescribed for commencing an action and service of process of the original complaint.

7. One treatise gives the following examples where an amendment arises out of the same conduct, transaction or occurrence set forth in the original complaint:
[C]ourts generally allow the relation back of amendments that cure jurisdictional or venue defects. Courts also allow relation back when the new claim is based on the same facts as the original pleading and only changes the legal theory.
Amendments that amplify or restate the original pleading or set forth facts with greater

We now examine the application of Rule 15(c)(3) to the appellant's amended complaint against the appellees.

## A.

### *Same Conduct, Transaction or Occurrence*

The first requirement under Rule 15(c)(3) is that the amendment must arise out of the conduct, transaction or occurrence set forth in the original complaint.[7] There is no dispute that the claim or defense to be asserted by the appellant in the amended complaint arises out of the same occurrence, the collapse of the trench, as that contained in the original complaint that she filed in the circuit court in April 1995. *See, e.g., Roberts v. Wagner Chevrolet–Olds, Inc.*, 163 W.Va. 559, 563, 258 S.E.2d 901, 903 (1979) (courts, analyzing whether an amendment to a pleading relates back, "have generally found relation back where the amendments state a cause of action growing out of the specified conduct of the defendant which gave rise to the original cause of action."). The question therefore remains whether the other requirements of Rule 15(c) have been met.

## B.

### *Notice and Lack of Prejudice*

██ The second requirement in determining whether an amendment relates back under Rule 15(c)(3) is that the party being added to the action must have received "notice" of the action, "so that the party is not prejudiced in maintaining a defense on the merits." 3 *Moore's Federal Practice 3d*, § 15.19[3][c] at 15–86. In Syllabus Point 3 of *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), we suggested that courts

specificity should relate back. Amendments are allowed to relate back when a plaintiff attempted to set forth a claim in the original complaint. Thus, if the amendment corrects technical deficiencies in order to more adequately plead the claim that was attempted in the original pleading, the amendment will relate back.
3 *Moore's Federal Practice 3d*, § 15.19[2] at 15–81—83.

should weigh the prejudice an amendment changing parties might have on a defendant:

> The purpose of the words "and leave [to amend] shall be freely given when justice so requires" in Rule 15(a) W.Va. R.Civ.P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.

We similarly indicated that courts should consider the prejudicial effect of an amendment changing a legal theory in *Roberts v. Wagner v. Chevrolet–Olds, Inc.*, 163 W.Va. 559, 258 S.E.2d 901 (1979), stating in the sole syllabus point that:

> An amendment to a complaint which changes only the legal theory of the action, or adds another claim arising out of the same conduct, transaction or occurrence, will relate back to the filing of the original complaint, provided (1) injustice to the adverse party will not result from allowance of relation back, and (2) the adverse party has received adequate notice of the claim against him and has an adequate opportunity to prepare a defense to it.

*See also*, Syllabus Point 4, *Nellas v. Loucas*, 156 W.Va. 77, 191 S.E.2d 160 (1972) (discussing a defendant's amendment of his answer to plead the affirmative defense of the statute of limitation under Rule 15(b) of the *Rules of Civil Procedure*).

While Rule 15(c)(3) requires that a party to be brought in by amendment receive notice of the institution of the original action, the form of the notice may be either formal[8] or informal, and does not require service of the original complaint or summons upon the party affected by the amendment.[9] *See, e.g., McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 797 (Tenn.Ct.App.1997) ("Unofficial, informal notice that a lawsuit has been filed coupled with knowledge of the facts on which the lawsuit is based may suffice as long as the rule's other requirements are satisfied."); Syllabus Point 6, *Fennesy v. LBI Management, Inc.*, 18 Kan.App.2d 61, 847 P.2d 1350 (Ct.App. 1993) ("Under K.S.A. 60–215(c), whether an amendment changing the party against whom a claim is asserted will relate back to the date of the original pleading is not dependent upon proper service of summons. Informal notice which satisfies 60–215(c)(1) and (2) is sufficient to bring into operation the relation back of the amendment."). As one court stated:

> First, Rule 15(c)(3) notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means. *See Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977) (holding that a person who the plaintiff sought to add as a defendant had adequate notice under 15(c)(3) when, within the relevant period, the person by happenstance saw a copy of the complaint naming both the place where he worked and an "unknown employee" as a defendant, which he knew referred to him); *see also Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986) (notice need not be formal); *Eakins v. Reed*, 710 F.2d 184, 187–88 (4th Cir. 1983) (same); *Kirk v. Cronvich*, 629 F.2d

8. An example where a newly-added party had formal notice of the original action can be found in *Lawson v. Hash and Benford*, 209 W.Va. 230, 545 S.E.2d 290 (2001) (*per curiam*). In *Lawson*, we approved an amendment to a complaint adding a partner in a law firm to a civil action, where the plaintiff mistakenly sued only the law firm partnership, because the partner "had actual knowledge of this civil action when the complaint was served upon the law firm, as evidenced by the fact that [the partner] personally notified the insurance carrier regarding the institution of the action." 209 W.Va. at 233, 545 S.E.2d at 293.

9. To be clear, our discussion applies to the relation-back provisions of Rule 15(c)(3), and whether a newly-added defendant had knowledge that a lawsuit was filed by the plaintiff. The newly-added defendant must still be properly served with a copy of the plaintiff's amended complaint.

404, 407–08 (5th Cir.1980) (same). At the same time, the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action.

*Singletary v. Pennsylvania Dept. of Corrections,* 266 F.3d 186, 195 (3d Cir.2001). Notice is sufficient if the newly-named party was made aware of the issues in the original complaint, such that the party can maintain a defense. 3 *Moore's Federal Practice 3d,* § 15.19[3][c] at 15–86 –87.[10]

■■■■■■ It appears that the appellees in the instant case had actual notice of the original lawsuit filed by the appellant, such that they would not be prejudiced by the delay in maintaining a defense on the merits. The appellant asserts, and the appellees do not challenge, that the appellees were employees of the City of Weirton at the time the appellant initiated her lawsuit against the City, and that the appellees knew about the lawsuit and participated—before the expiration of the statute of limitation—in answering written discovery and/or participating in depositions on the City's behalf. Furthermore, the same attorneys who represented the City of Weirton prior to its dismissal now represent the appellee employees of the City; the attorneys would therefore have a difficult time in claiming, and in fact do not complain, that their defense of the appellant's claims

have been prejudiced because of some deficiency in the notice or timing thereof that she received.[11]

## C.

### Mistake Concerning the Identity of the Proper Party

The third requirement under Rule 15(c)(3) requires an examination of whether the newly-named appellees knew or should have known that the appellant would have named them in the original complaint, but for a mistake in identity. This requirement has been the focus of much debate by the parties, in their briefs and at oral argument, and the interpretation of this requirement formed the basis of the circuit court's decision to dismiss the appellant's amended complaint.

The appellees repeatedly argued, before this Court and before the circuit court, that a "mistake concerning the identity of the proper party" in Rule 15(c)(3) means a mistake of fact, a misnomer, a misidentification—and not a mistake of law. The appellees contend that the appellant knew the identities of the appellees, but because of a mistaken interpretation of the Act, made a conscious choice not to name the appellees until after the expiration of the statute of limitations. The appellees assert that the appellant did not make a "slip of the pen" when she chose not

10. Notice may be adequate, and relation back would not be prejudicial, if there is a sufficient "identity of interest" between the new party added by an amendment and the original one. In Syllabus Point 2 of *Plum v. Mitter,* 157 W.Va. 773, 204 S.E.2d 8 (1974), we indicated that courts should consider "whether there is an 'identity of interest' between the original party plaintiff and the added parties" when assessing motions to add new plaintiffs under Rule 15. We did not, however, define what an "identity of interest" might be.

The classic definition of identity of interest is where the original and new party are so intertwined in their affairs, business operations or other activities that it is fair to conclude that the added party learned early on of the commencement of the original action. *In re Integrated Resources Real Estate Ltd. Partnerships [Securities] Litig.,* 815 F.Supp. 620, 646 (S.D.N.Y.1993). For example, in *Plum v. Mitter* we found that the plaintiff-child had an identity of interest with his parents, such that it was not prejudicial to the defendant to add the parents to the lawsuit after

the expiration of the statute of limitation. Furthermore,

> [i]dentity of interest is usually present in three situations: (1) when the original and added parties are a subsidiary corporation and a parent; (2) when the two related corporations have substantially identical officers, directors, or shareholders and have similar names or share office space; and (3) when the two parties are co-executors of an estate.

3 *Moore's Federal Practice 3d,* § 15.19[3][c] at 15–88.

11. Notice can be imputed to a new party if the new party shares legal counsel with the original party after the filing of the original pleading, because it is likely that the parties' attorney would have communicated to the new party that he or she may be joined in the action. *See, e.g., Singletary v. Pennsylvania Dep't of Corrections,* 266 F.3d 186, 195 (3d Cir.2001); *Integrated Resources Real Estate Ltd. Partnership Sec. Litig.,* 815 F.Supp. 620, 648 (S.D.N.Y.1993); *Gleason v. McBride,* 869 F.2d 688, 693 (2d. Cir.1989).

to name the individual appellees in her original complaint, but rather made a "strategic decision ... to doggedly pursue her claim" solely against the City even though her action against the City was barred by law.

■ The appellees are partly correct in their arguments, because our cases have held that Rule 15 permits a party to correct misnomers. *See, e.g., Higgins v. Community Health Assoc.,* 189 W.Va. 555, 433 S.E.2d 266 (1993) *(per curiam)* (plaintiff sued hospital under registered, assumed name "Jackson General Hospital;" amendment of complaint allowed to relate back under Rule 15 to assert action against the hospital's owner, "Community Health Association, d/b/a Jackson General Hospital"). Our cases have also allowed plaintiffs to use Rule 15 to correct the status of a party being sued. *See, e.g., Marks Construction, Inc. v. Board of Educ. of County of Wood,* 185 W.Va. 500, 408 S.E.2d 79 (1991) *(per curiam)* (plaintiff mistakenly sued defendant-partnership as a corporation; amended complaint suing defendant as a partnership held to relate back); *Lawson v. Hash and Benford,* 209 W.Va. 230, 545 S.E.2d 290 (2001) *(per curiam)* (plaintiff mistakenly sued defendant partnership; amended complaint suing individual partners held to relate back). We also agree with the appellees' proposition that Rule 15 allows a plaintiff to only correct a mistake, not to correct a deliberate tactical omission of a party or claim. *See Brown v. Community Moving & Storage, Inc.,* 193 W.Va. 176, 179, 455 S.E.2d 545, 548 (1995) *(per curiam)* ("We recognize the plaintiff's reluctance to bring the fraud action ... because to do so effectively would block recovery of the valuable insurance proceeds. However, we do not find this fact to be persuasive. It is not a rare situation in which a plaintiff must choose to add a party he would rather not bring into the suit or plead alternative theories to the circuit court.")

However, our reading of the authorities cited by the appellees, particularly *Moore's Federal Practice 3d,* leads us to language—which is not cited by the appellees—which plainly states (with emphasis added):

> A court should not limit its findings of mistake merely to cases of misnomer. Rather, [a court] should focus on the new party's appreciation of the fact that the failure to include it in the original complaint was an error and not a deliberate strategy. A court should allow an amendment to relate back to add a defendant that was not named at the outset, but was added later when plaintiff realized that the defendant should have been named, and also to allow an amendment to the original complaint that named the defendant, but in the wrong capacity.

3 *Moore's Federal Practice 3d,* § 15.19[3][d] at 15–90—91. The treatise also makes a statement contrary to the position repeatedly asserted by the appellees, that "mistake" as used in Rule 15 means only a mistake of fact, stating:

> Mistake may also include a mistake in law. The inquiry is whether the defendants should have known that they would be sued but for a mistake by the lawyer to name them, rather than whether the defendant actually knew that the law required it to be named....

3 *Moore's Federal Practice 3d,* § 15.19[3][d] at 15–92.1.

■ The "mistake" language contained in both the federal and West Virginia versions of Rule 15 "was prompted by several cases in which plaintiffs, unaware of the technical requirements of the law, mistakenly named institutional instead of individual defendants." *Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35 (2d Cir.1996). Rule 15(c)(3)(B) was "expressly intended to preserve legitimate suits despite ... mistakes of law at the pleading stage." 80 F.3d at 36.

Other courts, interpreting language similar to our Rule 15(c)(3), have held that a plaintiff's or lawyer's misinterpretation of the law and failure to sue the correct defendants in the original complaint is a legal "mistake" correctable by an amendment, and the amendment relates back to avoid the effects of the statute of limitation. For example, in *Woods v. Indiana University–Purdue University at Indianapolis,* 996 F.2d 880 (7th Cir.1993), a plaintiff sued a university for an unlawful search of his home by the university's police department. The district court

later dismissed the university, finding it was constitutionally immune. The plaintiff then filed an amended complaint against the proper defendants, the individual university employees whom he alleged conducted the unlawful search; the district court dismissed the amended complaint as time-barred. On appeal, the court of appeals reversed and allowed the plaintiff to amend the complaint, stating that " 'mistake' as used in Rule 15(c) applies to mistakes of law as well as fact," and finding it clear that the "plaintiff made a 'mistake' as to the identity of the proper party" and no question that the plaintiff "would have sued the proper party but for that mistake." 996 F.2d at 886–87. "What it comes down to purely and simply is ... that it was the legal blunder of Woods' counsel— his 'mistake'—that caused his continued (and fruitless) pursuit of state agencies rather than individual state actors as defendants in the case[.]" 996 F.2d at 887.

Similarly, in *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548 (7th Cir.1996), a *pro se* prison inmate brought an action under 42 U.S.C. § 1983 against a sheriff's department, alleging he suffered a heart attack when jail officials took away his heart medication. After the expiration of the statute of limitation, the district court dismissed the inmate's complaint against the sheriff's department because it failed to name the individual jail officials employed by the sheriff's department as required by 42 U.S.C. § 1983, and refused to allow the inmate to amend his complaint to name the individual employees. The court of appeals reversed the district court and allowed the inmate to amend his complaint to name the individual employees and relate back to the date the original complaint was filed. The court of appeals concluded that "[a] legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule 15(c)(3)(B)," and found that the inmate's "failure to identify and serve these defendants ... was not due to any lack of diligence on his part ... [because] he apparently believed that, by suing the Sheriff's Department, he effectively sued everyone involved in precipitating his injuries." 95 F.3d at 557. *See also, Blaskiewicz v. County of Suffolk*, 29 F.Supp.2d 134

(E.D.N.Y.1998) (*pro se* inmate's amended complaint naming individual correctional officers related back to original complaint against county); *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34 (2d Cir.1996) (inmate's failure to name individual defendants within the limitation period was a mistake of law concerning identity of the proper party, which supported relation back of amendment to complaint against institutional defendant); *State ex rel. Eccleston v. Montana Third Jud. Dist. Ct.*, 240 Mont. 44, 50, 783 P.2d 363, 367 (1989) (plaintiffs sued school district, and upon discovering school district was immune under state law, plaintiffs amended complaint to add school principal and janitors; district court properly allowed the amendment to relate back because while there was "no mistake as to the identity of the District employees who were involved in the circumstances that led to the filing of this lawsuit ... there was a mistake as to *the identity of the proper parties* to this lawsuit[.]"); *Brown v. Georgia Dept. of Revenue*, 881 F.2d 1018, 1022–23 (11th Cir.1989) (plaintiff sued state personnel board; later amendment after expiration of statute of limitation to add individual members of board in their official capacities to comply with 11th Amendment was proper way to correct a "pleading mistake").

We further note that the appellees' mistake-of-fact argument is simply not supported by the language of Rule 15(c)(3). The rule applies to amendments that both "changes the party *or* the naming of the party against whom a claim is asserted." "Mistake" must therefore mean more than a mere misnomer or mislabeling of the proper party, because the notice and knowledge requirements contained in Rule 15(c)(3)(A) and (B) clearly apply only to newly added parties—not mislabeled parties who are already before the court under an incorrect name.

A misnomer is involved when the correct party was served so that the party before the court is the one plaintiff intended to sue, but the name or description of the party in the complaint is deficient in some respect. Under those circumstances, an amendment merely correcting that description does not entail the actual "changing" of the parties. . . .

An amendment by which plaintiff seeks to change the capacity in which defendant is being sued also does not change the parties before the court and will relate back. In this situation defendant has had notice from the outset that an action has been brought against him and may not properly claim prejudice or surprise to defeat the amendment.

6A *Federal Practice & Procedure* § 1498 at 130–134.

■■■■■ We therefore conclude that under Rule 15(c)(3)(B), a "mistake concerning the identity of the proper party" can include a mistake by a plaintiff of either law or fact, so long as the plaintiff's mistake resulted in a failure to identify, and assert a claim against, the proper defendant. A court considering whether a mistake has occurred should focus on whether the failure to include the proper defendant was an error and not a deliberate strategy.

■■■■ In the instant case, the appellant knew of the identity of the appellees, but due to a mistaken interpretation of law by appellant's counsel did not comprehend until this Court's opinion was issued in *Brooks I* on May 18, 1998, that the appellees were proper parties to be sued. The appellant did not make a conscious, deliberate strategic reason to not name the appellees, but did so based upon a reasonable reading of several statutes. It is clear, then, that the appellant made a mistake concerning the identity of the proper party as set forth in Rule 15(c)(3)(B).

Before a complaint can be amended to add a new defendant, Rule 15(c)(3)(B) also requires that a circuit court find that the newly-named defendant knew or reasonably should have known that the plaintiff would have sued it in the original complaint, but for the mistake. We therefore examine the record to determine if the appellees knew or should have known, when the appellant filed her original complaint, that the appellant's attorney had made a mistake of law in failing to identify the appellees as defendants.

■■■■ The appellant's original complaint in the instant case alleged that the City, through various listed acts and omissions by the appellees, "acted recklessly and in disregard of the safety of the decedent." The appellant clearly was stating a cause of action against the appellees, who could be held liable under *W.Va.Code,* 29–12A–5(b)(2) for "acts or omissions ... in a wanton or reckless manner." The statute states that only an "employee of a political subdivision" can be liable for wanton or reckless conduct—yet the original complaint mistakenly named only the City. Before the appellant's original complaint was filed, this Court had "repeatedly recognized that the Act permits the naming of both political subdivisions and employees of political subdivisions as defendants in a civil action, under certain defined circumstances." *Brooks I,* 202 W.Va. at 253, 503 S.E.2d at 821 (citing numerous prior cases where actions against political subdivision employees had been allowed). We therefore conclude that the appellees should have known, when the original complaint was filed, that the appellant would have named the appellees in her complaint but for a mistake in identifying the proper party.

### D.

*Notice and Knowledge within Time Limit*

■■■■ The last requirement under Rule 15(c)(3) is that the party to be added to the complaint by amendment must be given notice of the lawsuit, and must know or should know that there has been a mistake in identifying the proper party, within the period provided by law for commencing an action or within 120 days after commencement of the action. In *Maxwell v. Eastern Associated Coal Corp., Inc.,* 183 W.Va. 70, 394 S.E.2d 54 (1990), we held in the Syllabus:

Where a plaintiff seeks to change a party defendant by a motion to amend a complaint under Rule 15(c) of the West Virginia Rules of Civil Procedure, the amendment will relate back to the filing of the original complaint only if the proposed new party defendant, prior to the running of the statute of limitations, received such notice of the institution of the original action that he will not be prejudiced in maintaining his defense on the merits and that he knew or should have

known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Rule 15(c)(3) was amended in 1998 and altered *Maxwell,* expanding the time when notice must be received by the party to be added to include "the period provided by Rule 4(k) for service of the summons and complaint[.]" Rule 4(k) provides that service of the summons and complaint be "made upon a defendant within 120 days after the filing of the complaint[.]"

In *Maxwell,* the plaintiffs sued two defendants, but did not serve the original complaint. After the expiration of the statute of limitation, the plaintiffs sought to amend the complaint to add a third defendant. We concluded that the plaintiffs could not, under Rule 15(c), amend their complaint because the newly-added defendants had not received notice of the original action prior to the expiration of the statute of limitation. In reaching this decision, we relied on *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), a decision where the court similarly interpreted *Fed.R.Civ.Pro.* Rule 15(c) to require notice to the new defendant prior to the expiration of the statute of limitation.

Because of criticism that *Schiavone v. Fortune* was inconsistent with the liberal pleading practices allowed by the *Rules of Civil Procedure,* in 1991 the federal Rule 15(c) was amended and "revised to change the result in *Schiavone v. Fortune*[.]" *Committee Note to 1991 Amendment.* In West Virginia, the provision allowing notice within 120 days of the filing of the action was added to the language of Rule 15(c) in 1998. The rule change altered the result of decisions such as *Maxwell*—and cases in other jurisdictions just like it—which "reached the paradoxical conclusion that a newly named party to be added by amendment must be notified within the limitations period while, in contrast, a properly named party defendant has no right to be served within the limitations period." 3 *Moore's Federal Practice 3d,* § 15.19[3][e] at 15–93. This modification of the rule achieved the primary goal of Rule 15, which is to insure that cases and controversies be deter-

mined upon their merits and not upon legal technicalities or procedural niceties.

We therefore hold that under the 1998 amendments to Rule 15(c)(3), before a plaintiff may amend a complaint to add a new defendant, it must be established that the newly-added defendant (1) received notice of the original action and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the newly-added defendant, prior to the running of the statute of limitation or within the period prescribed for service of the summons and complaint, whichever is greater. To the extent that *Maxwell v. Eastern Associated Coal Corp.* conflicts with this holding, it is hereby modified.

We conclude that the appellant has met the requirements of Rule 15 regarding notice to the appellees within the proper time period. The appellant's complaint was filed in April 1995, and within 120 days—and well before the June 1996 expiration of the statute of limitation—the appellees appear to have learned of the action, were participating in discovery, and were interacting with the City's attorneys, attorneys who are now representing the appellees. And, the appellees knew, or should have known, that the appellant had not specifically named them as parties when their conduct was at issue in the lawsuit, and they were proper parties under the Act.

## IV.

### Conclusion

The circuit court's order dismissing the appellant's amended complaint as barred by the statute of limitation is reversed. Under Rule 15(c), the amended complaint should relate back to the date the appellant's original complaint was filed in April 1995. Accordingly, the case is remanded for further proceedings.

Reversed and Remanded.